DART ANTHONY, on Behalf of Himself and all other Taxpayers of the Unincorporated Town of Winchester, County of Clark, State of Nevada; and MARY HABBART, on Behalf of Herself and all other Taxpayers of the Unincorporated Town of Paradise, County of Clark, State of Nevada; and MARIAN MICHAELIS, on Behalf of Herself and all other Taxpayers of the Unincorporated Town of Sunrise Manor, County of Clark, State of Nevada; and DONALD R. COX, Sr., on Behalf of Himself and all

OTHER TAXPAYERS OF THE UNINCORPORATED TOWN OF EAST LAS VEGAS, COUNTY OF CLARK, STATE OF NEVADA; ORGANIZED FOR THE PURPOSE OF SUIT AS PEOPLE FOR INCORPORATION, APPELLANTS, v. THE STATE OF NEVADA; AND THE CITY OF LAS VEGAS, BY AND THROUGH ITS BOARD OF CITY COMMISSIONERS, WILLIAM H. BRIARE, MAYOR, PAUL J. CHRISTENSEN, MYRON E. LEAVITT, RON LURIE, AND ROY WOOFTER, CONSTITUTING SAID BOARD; AND LEGISLATIVE COMMISSION OF THE STATE OF NEVADA, RESPONDENTS.

No. 10668

June 15, 1978                                    580 P.2d 939

*Richard C. Maurer,* Las Vegas, for Appellants.

*Robert List,* Attorney General, and *Donald Klasic,* Deputy Attorney General, Carson City; *Marcus H. Sloan, III,* City Attorney, and *Janson F. Stewart,* Deputy City Attorney, Las Vegas; *Frank W. Daykin,* Carson City, for Respondents.

## OPINION

*Per Curiam:*

In 1977, the Nevada Legislature enacted into law Chapter 534, Statutes of Nevada, which in essential part provides for the enlargement of the City of Las Vegas to include a defined area conditonally subject to an affirmative vote from both the inhabitants of the present city and the inhabitants of the area sought to be annexed. Incident to this statutory purpose are various other provisions providing in part for the distribution of specific revenues within certain counties and prohibiting certain municipal corporations or annexations.

If the vote of the residents inhabiting both the incorporated and unincorporated area affected by Chapter 534 is affirmative, in July of 1979 the City of Las Vegas will be expanded to include the unincorporated townships of Winchester, Paradise, Sunrise Manor, and East Las Vegas. Appellants, residents of those unincorporated townships, commenced this action in the district court challenging the constitutionality of sections 1, 2, 3, and 18 of Chapter 534. Specifically, appellants alleged that sections 1, 2, and 3 of the Act violated the Nevada Constitution, Article 4, § 21, and that section 18 violated Article 8, § 8. The district court found Chapter 534 to be constitutional and this appeal ensued.

Three issues confront us. First, are sections 1, 2, and 3 of Chapter 534 violative of the Nevada Constitution, Article 4, § 21? Second, is section 18 of Chaper 534 violative of the Nevada Constitution, Article 8, § 8? Third, are any of the enactments' provisions severable?

1. *Sections 1, 2, and 3 of Chapter 534.*

Appellants contend that sections 1, 2, and 3 of Chapter 534 are unconstitutional as violating the Nevada Constitution, Article 4, § 21, which reads

> In all cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the State.

Section 1 of Chapter 534 amends NRS 369.173 pertaining to the distribution of liquor tax proceeds. Section 2 of the Act amends NRS 370.260 pertaining to the distribution of tax and license fees. Section 3 of the Act amends NRS 377.050 pertaining to the distribution of all fees, taxes, interests, and penalties imposed. The amendments to each of these statutes added in all or in part that in

> a county having a population of more than 200,000, 68.5% of the money shall be apportioned to the largest city and the remainder among the other cities in proportion to their respective populations.

Appellants contend that the law is principally addressed as a remedy to problems currently confronting Clark County and that the limitation of 200,000 population, although concededly open-ended, is but a mere subterfuge to circumvent general law restrictions. Respondents contend that while the legislation may appear to address only the Clark County context, the open-ended classification permits any county with the requisite population to benefit by the statute and thus assures constitutionality.

All presumptions by the judiciary are in favor of legislative enactments, and these enactments are presumed to be constitutional; the judiciary will not declare an act void because it disagrees with the wisdom of the Legislature. Damus v. County of Clark, 93 Nev. 512, 569 P.2d 933 (1977). In Viale v. Foley, 76 Nev. 149, 350 P.2d 721 (1960), we held that a law to be general need not be operative in every part of the state. If a statute is special or local legislation, its constitutionality depends upon whether a general law can be made applicable. Conservation District v. Beemer, 56 Nev. 104, 45 P.2d 779 (1935). Further, the Legislature may use population as a criterion in effecting a law which may nevertheless be deemed a general law. *Damus, supra; Viale, supra.* The use of a population criterion, however, must be rationally related to the subject matter, and if the use of a population criterion creates an odious or absurd distinction, then it is unconstitutional. State v. Donovan, 20 Nev. 75, 15 P. 783 (1887); *accord,* Reid v. Woofter, 88 Nev. 378, 498 P.2d 361 (1972).

By the express terms of the statute, in any county exceeding the 200,000 population the largest city is to obtain a fixed 68.5% of all the taxes, fees, and other allocations of distributed funds. All other cities in that county must share the remainder proportionate to their population. Simple hypotheticals illustrate the inherent problematic nature of the legislation. Let us assume that in a proper county, the largest city has an exact population of 50,000 while the four next largest cities have exactly 49,999. Because its population is only greater by one, the largest city will be allocated by law 68.5% of all the funds so distributed while the other four cities must share equally the remaining 31.5% of the distribution. This would average approximately 8% for each of the four cities. Thus, because their populations fell one person short of the largest city, each of the other cities shares 8% of the allocation while the largest city obtains the 68.5% share. Additionally, what if another qualifying county were comprised of a number of small cities, none of which contains 68.5% of the combined population. The challenged legislation would permit the largest of these cities to benefit without a substantiation of population. These examples clearly demonstrate that the Legislature's intent, though commendable, was to protect the fiscal policy of Clark County and not the financial ability of smaller cities to provide needed services.

At the time of passage of Chapter 534, the City of Las Vegas had approximately 68.5% of the county's population. Under the general law which antedated the challenged legislation, the City received approximately 68.5% of the relevant revenues.

*See,* NRS 369.173, 370.260, and 377.050. In *Damus, supra,* we noted that it was probable that Washoe County would have 200,000 inhabitants at the time of the publication of the 1980 census. If sections 1, 2, and 3 are not local laws, how could the figure of 68.5% be justified by other counties. It is clear to us that the only purpose of the amendments is to perpetuate the existing state of affairs in Clark County.

Because a general law can be made applicable to this situation, sections 1, 2, and 3 of Chapter 534 are special local legislation which statutorily assures a fixed percentage of allocated funds for Las Vegas, while other cities within Clark County must share the remainder in proportion to their population. Even if several counties could currently be affected by this statute, it would remain unconstitutional. The ostensible purpose of the challenged legislation is to distribute taxes equally between local governmental units. Yet, the population classification bears no rational relation to that purpose. Nor is there any showing why tax distribution should be any different in our more populous counties. While the Legislature may, within constitutional limits, disburse the proceeds of taxes, fees, and penalties to various communities inequitably according to need, City of Las Vegas v. Mack, 87 Nev. 105, 481 P.2d 396 (1971), when the Legislature chooses to disburse among other cities according to population proportion, however, there must be some rational basis for treating the largest city in a particular county different from other cities. Here, such rationality is absent.

Section 19(3) of the questioned law further suggests that the legislation is void as special. It provides, "[I]f the requirements for the enlargement of the city are met, Sections 1 to 4, inclusive, 10, 14, 15, 16, and 17 of this Act shall become effective on July 1, 1979." As this section indicates, if the annexation conditions are not met, the revenue distribution provisions will not be implemented. If the revenue allocation amendments had a reasonable relation to the needs of the other counties, rather than imposing Clark County's fiscal policies on them, the amendments would have had general application.

Sections 1, 2, and 3 of Chapter 534 specify rather than classify and are therefore constitutionally impermissible. The legislation is directed at solving a problem special to Las Vegas which could as easily be resolved by a general law.

2. *Section 18.*

Section 18 prohibits the incorporation of any new city or territory annexed to an existing city in any county whose population is 200,000 or more. Contiguous territory, however, may

be annexed to an existing city upon petition of all the property owners of that territory.

It is clear that municipalities are creatures of the Legislature. State v. Swift, 11 Nev. 128 (1876). It is not indicated, however, why no more municipalities may incorporate in counties with a population exceeding 200,000. Here there is a blanket prohibition on further municipal incorporation in counties with a population exceeding 200,000, irrespective of the proximity or lack of proximity to the larger metropolitan areas. It is significant to note that this section, unlike section 19(3) and others, went into effect upon passage. Section 18 is on its face unconstitutional and directly the result of the purpose of this Act which was to practically compel the four outlying communities of Las Vegas to affirmatively vote for annexation or be indefinitely precluded from incorporating on their own.

3. *Severability.*

Having declared sections 1, 2, 3, and 18 unconstitutional, the last question to be decided is whether the remainder is operative and sufficiently independent of the voided legislation as to survive challenge. Section 18.5 of the Act contains an express severability clause in order that the other sections which can be given effect might be saved. Although express severability provisions in statutes are not necessarily controlling, County of Clark v. City of Las Vegas, 92 Nev. 323, 550 P.2d 779 (1976), severability is appropriate here, as the other sections of the law are in aid of legislative intent. The other sections of the Act provide for a vote in the incorporated area of Las Vegas and in the unincorporated surrounding area to determine whether the city limits of Las Vegas will be expanded. If approved by the voters, the City of Las Vegas may be enlarged without modification of the several tax statutes or prohibiting incorporations or annexations within Clark County. Each of the sections that we have declared unconstitutional was designed to further a considered legislative policy related to the enlargement, but none is so interdependent as to make enlargement impossible or even impracticable without it. We are unable to conclude that the Legislature would not have passed the enlargement provisions without the tax allocation and other voided sections.

Affirmed in part, reversed in part.