OPINION
 

 Per Curiam:
 

 SUMMARY
 

 This case raises the issues of: (1) whether several provisions of Nevada’s recall petition laws violate the Federal and Nevada Constitutions; and (2) whether the procedures of the Nevada Administrative Procedure Act (the “APA”) are to be applied during the judicial review of a Secretary of State’s decision regarding an election petition. The underlying dispute involves two
 
 *942
 
 efforts by the Citizens for Honest & Responsible Government (the “Citizens”) to recall Clark County Commissioner Yvonne Atkinson Gates. In both instances, the Secretary of State Dean Heller determined that the Citizens’ petitions failed because they did not contain the requisite number of valid signatures. The Citizens appealed the Secretary’s decision to the district court where they argued that several aspects of Nevada’s recall petition statute were unconstitutional, including: (1) the sixty-day limit for circulating a recall petition; (2) the provisions allowing individuals signing a recall petition to later remove their names; and (3) the provisions allowing the Secretary to use a random sample of at least five hundred signatures from the petition to statistically determine its validity. After a hearing on the matter, at which the court loosely applied the judicial review procedure provided for in the APA, the district court concluded that the statutes at issue were constitutional. On appeal, we similarly conclude that the challenged provisions do not violate the Federal or Nevada Constitutions. Further, we conclude that the APA does not apply to the review proceedings, and that the district court’s reliance on it here was harmless error.
 

 STATEMENT OF FACTS
 

 On March 9, 1998, the Citizens initiated their recall effort by filing a notice of intent to circulate a petition pursuant to Chapter 306 of the NRS, which provides that a special election be held if the recall petition is successful. The Nevada Constitution requires that in order for a petition to be successful, the petitioners must gather signatures from not less than twenty-five percent (25%) of the voters who voted in the election in which the official was elected.
 
 See
 
 Nev. Const, art. 2, § 9. In this case, valid signatures from 4,380 registered voters in Gates’s district were needed to force a special election.
 

 Two months later, the Citizens submitted their petition containing 7,474 raw signatures to the Clark County Registrar as required by statute. The next day, pursuant to NRS 306.035, the Secretary ordered the Registrar to determine the petition’s validity by examining the signatures in a random sampling of at least 500 signatures — a statistical procedure which allows for the quick determination of a petition’s failure or success. Of the 503 signatures sampled, the Registrar determined only 244 to be valid. Because the sampling needed to have at least 295 valid signatures, the Secretary declared that the petition was unsuccessful.
 

 Thereafter, the Citizens filed an appeal with the Secretary, who then conducted an investigation and ordered the Registrar to verify all 7,474 signatures on the first petition. After the results were calculated, the Secretary again declared that the petition had
 
 *943
 
 failed, as it only contained 3,639 verified signatures — 741 short of the required 4,380. Further, the Secretary determined that the difference between the full verification count and the count predicted by the random sampling was 0.25%.
 

 On July 6, 1998, the Citizens filed their second notice of intent to circulate a recall petition. After two months of collecting signatures door-to-door, the Citizens submitted to the Registrar the second petition, which contained 4,742 signatures. The Secretary again ordered that a random sample of signatures be taken to verify the petition. This time, 400 of the 500 signatures in the sample were found to be valid, but 416 were required for the petition to be successful. Accordingly, the Secretary again declared that the petition had failed because, by applying this sample to the entire petition, it would not contain the required 4,380 valid signatures. The Citizens once again appealed the Secretary’s determination, who again concluded that the petition had failed.
 

 On October 2, 1998, the Citizens filed their “Notice of Appeal to District Court” to have the Secretary’s decision regarding the second petition judicially reviewed. In this proceeding, the Citizens argued that: (1) the sixty-day limitation for circulation in NRS 306.015(3) violated the Federal and Nevada Constitutions; (2) the provision in NRS 306.015(5) allowing individuals who signed a recall petition to remove their names from a petition upon request to the county clerk violated the Nevada Constitution; and (3) the provisions in NRS 306.035 and NRS 293.1277-. 1279 allowing the Secretary to use a statistical sample to make an initial determination of a recall petition’s validity violated the Nevada Constitution.
 

 Because the Nevada statutes were unclear as to what procedure should be utilized at the judicial review proceeding, the district court decided to apply the procedure provided for in NRS Chapter 233B — the APA. Even though the APA requires that the record on appeal be limited to those items that were before the agency, the district court nonetheless indicated that it would allow the Citizens an opportunity to submit additional evidence to support its argument. This additional evidence consisted primarily of: (1) correspondence from the Secretary and news reports regarding the first petition; (2) affidavits of circulators regarding the difficulties of signature collection; and (3) historical and demographic data concerning recall petitions.
 

 Gates was then allowed to intervene and immediately filed a motion to strike the additional evidence claiming that the evidence was either prohibited under the APA or immaterial and thus inadmissible. After reviewing the documents in light of the motion, the district court concluded that the additional evidence was immaterial or otherwise inadmissible, and struck all additional exhibits.
 

 
 *944
 
 On May 21, 1999, the district court conducted a hearing on the Citizens’ arguments and, by way of written order on June 23, 1999, concluded that the Nevada statutes at issue were all constitutional, and affirmed the final order of the Secretary regarding the second petition.
 

 This appeal followed.
 

 DISCUSSION
 

 Whether the sixty-day limitation for petition circulation violates a petitioner’s First Amendment rights as guaranteed by the Federal Constitution
 

 The Citizens first contend that the sixty-day limitation in NRS 306.015(3)
 
 [1]
 
 impermissibly burdens the Citizens’ ability to circulate their recall petition, thereby restricting political speech in violation of the First Amendment of the United States Constitution made applicable to the states through the Fourteenth Amendment.
 
 [2]
 
 Further, the Citizens argue that the regulation’s constitutionality is subject to a strict scrutiny analysis, thus requiring the State to show that the sixty-day limitation is necessary to serve a compelling State interest. We disagree and hold that a more flexible standard is appropriate for reviewing the sixty-day limitation.
 

 In Burdick v. Takushi, 504 U.S. 428 , 430-32 (1992), the United States Supreme Court considered a First Amendment chal
 
 *945
 
 lenge to Hawaii’s prohibition on write-in voting. In its general discussion of election regulations,
 
 [3]
 
 the Court rejected the notion that any law regulating the right to vote is subject to strict scrutiny and noted:
 

 Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections; “as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.” . . .
 

 Consequently, to subject every voting regulation to strict scrutiny and to require that the regulation be narrowly tailored to advance a compelling state interest, as petitioner suggests, would tie the hands of the States seeking to assure that elections are operated equitably and efficiently.
 

 Burdick,
 
 504 U.S. at 433 (quoting Storer v. Brown, 415 U.S. 724, 730 (1974)).
 

 The Court then announced the following, more flexible, standard that controls our analysis here:
 

 A court considering a challenge to a state election law must weigh “the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate” against “the precise interests put forward by the State as justifications for the burden imposed by its rule,” taking into consideration “the extent to which those interests make it necessary to burden the plaintiffs rights.”
 

 Burdick,
 
 504 U.S. at 434 (quoting Anderson v. Celebrezze, 460 U.S. 780, 789 (1983)). Thus, the Court went on to note that when First Amendment rights are subjected to “severe” restrictions, the restrictions must be narrowly drawn to advance a compelling state interest; but when those rights are subjected to “reasonable, nondiscriminatory restrictions,” the State’s “important regulatory interests are generally sufficient to justify” the restrictions.
 
 Id.; see also
 
 Nevada Judges Ass’n v. Lau, 112 Nev. 51, 910 P.2d 898 (1996) (applying standard to examine constitutionality of proposed term limit law).
 

 
 *946
 
 Also guiding us in our review of the regulation is the general principle that “statutes must be construed consistent with the constitution” and that “ ‘an act is presumed to be constitutional and will be upheld unless the violation of constitutional principles is clearly apparent.’ ” Foley v. Kennedy, 110 Nev. 1295, 1300, 885 P.2d 583, 586 (1994) (quoting Sheriff v. Martin, 99 Nev. 336, 340, 662 P.2d 634, 637 (1983)).
 

 The Citizens advance several arguments to demonstrate “the character and magnitude” of the burden imposed by the sixty-day limitation. First, the Citizens note that the process of gathering signatures for a petition is time-consuming and difficult. Next, the Citizens argue that because circulators must ensure that the signatories live within the elected official’s voting district and are registered voters, circulators cannot use centralized locations for petitioning and are left with the time-consuming process of going door-to-door. Thus, the Citizens argue that the only reason they failed was because they did not have enough time to circulate the petition at issue.
 

 While we have no doubt that the process of collecting signatures for a recall petition is an arduous one, we conclude that the sixty-day limitation does not impose a “severe” burden on the petitioners. We note that both petitions had the requisite number of raw signatures, even after the petitioners decided to go door-to-door, and failed only because of insufficient valid signatures— a point rebutting any claim that gathering the sufficient number of signatures in sixty days is impossible. Further, the petitioners have not convincingly shown that the petitions failed solely because of inadequate time. Indeed, it is possible that the recall effort failed due to a lack of voter support.
 
 [4]
 
 Accordingly, after weighing the character and magnitude of the asserted injury, we conclude that the sixty-day limitation is not a “severe” restriction, but rather one that imposes only a limited burden on the petitioners’ First Amendment rights.
 

 Next, the Citizens argue that the State interests served by the sixty-day limitation do not justify the burden imposed on the petitioners’ First Amendment rights. Specifically, the Citizens argue that the sixty-day limitation serves only to protect elected officials by making it more difficult for them to be recalled.
 

 
 *947
 
 We recognize, however, that several state interests are served by the limitation. The sixty-day limitation serves to put all parties involved on notice of when the petition will be submitted so that they may respond accordingly. Further, the sixty-day limitation discourages frivolous or harassing petitions by requiring a petitioner to submit the petition after sixty days and to refile if the petition is unsuccessful.
 
 [5]
 
 We conclude that these interests are “important” State interests as they promote the efficient regulation of recall petitions so that “some sort of order, rather than chaos” accompanies the process.
 

 Although the sixty-day period necessarily burdens the Citizens’ First Amendment rights to a limited extent, we conclude that the State’s important regulatory interests sufficiently outweigh the burden. Thus, we hold that the sixty-day time limit does not unconstitutionally violate the Citizens’ First Amendment rights as guaranteed by the Federal Constitution.
 

 Whether various provisions of NRS Chapter 306 violate the Nevada Constitution’s recall provisions
 

 Nevada’s recall right was created by constitutional amendment in 1912 providing the public with an additional check on its elected officials.
 
 See
 
 Nev. Const. art. 2, § 9. Importantly, the section creating the recall right in the Nevada Constitution contains a unique provision that “[s]uch additional legislation
 
 as may aid the operation
 
 of this section shall be provided by law.”
 
 Id.
 
 (emphasis added). Thus, the Citizens contend that many of the statutory provisions regulating the recall procedures violate this constitutional mandate because they fail to “aid the operation” of the recall right.
 

 This court has generally stated that the recall right “should be liberally construed with a view to promote the purpose for which it was enacted.” State v. Scott, 52 Nev. 216, 231, 285 P. 511, 514 (1930). Further, in determining whether legislation regulating the recall procedures “aid[s] the operation” of the recall right, this court has held that “any statutory provision intended to safeguard the operation of recall procedures aids in the operation thereof.” Fiannaca v. Gill, 78 Nev. 337, 345, 372 P.2d 683, 687 (1962).
 
 *948
 
 We will also consider the actual effect of the statutory provisions on the recall right to assess whether it “aids in the operation thereof.”
 

 The sixty-day limitation on circulation
 

 The Citizens first attack the sixty-day circulation period contained in NRS 306.015 as violating the Nevada Constitution. Specifically, the Citizens argue that by shortening the amount of time available to the petitioners, the sixty-day time limitation frustrates and interferes with the recall right, rather than “aiding” it.
 

 As discussed above, however, the sixty-day time limit serves to notify elected officials of the relevant time periods involved and discourages frivolous and harassing petitions. Thus, by furthering the efficient administration of the recall right and helping to ensure that the right is used for its intended purposes, we conclude that the sixty-day limitation safeguards the recall rights, and thus “aids in the operation thereof.”
 

 In an additional argument against the sixty-day limitation, the Citizens contrast the recall procedure with the related referendum and initiative procedure.
 
 [6]
 
 Like the recall right, the Nevada Constitution requires that any laws regulating the initiative and referendum procedure “facilitate the operation thereof.” Nev. Const. art. 19, § 5.
 

 The Citizens note that in 1985, Nevadans approved a constitutional amendment imposing specific time limits on the circulation of referendum and initiative petitions, requiring those petitions to be circulated within one year of the relevant election or legislative session.
 
 See
 
 1987 Nev. Stat., File No. 22, 2348. Thus, the Citizens argue that time limits on the recall right must similarly be added through constitutional amendment. However, we are not persuaded that the time-limit changes to the initiative and referendum rights could not have been made through statutory enactment, especially in light of the legislature’s power to enact laws that “facilitate the operation” of the referendum and initiative right.
 

 
 *949
 
 The Citizens further note the comparative ease with which a referendum or initiative petition can succeed in contrast to a recall petition. Specifically, the Citizens note that referendum or initiative petitions can be circulated over a time period of as much as one year and require signatures from just ten percent of the electorate.
 
 See
 
 Nev. Const., art. 19, §§1,2. However, the interests served by the initiative and referendum process are sufficiently distinguishable from those involved in the recall process. In particular, a recall petition attacks a public official whom the public has already once elected and, if successful, requires a costly special election at the taxpayers’ expense. Accordingly, the State has a greater interest in “safeguarding” the recall procedure. We therefore conclude that the comparison of recall provisions to referendum and initiative provisions is unpersuasive to our constitutional inquiry.
 

 The signature removal procedure
 

 The Citizens next contend that NRS 306.015(5),
 
 [7]
 
 which allows a petition signatory to remove his name from the recall petition by notifying the county clerk, violates the Nevada Constitution. Specifically, the Citizens contend that the provision encumbers, rather than “aids,” the recall right because the rescission right is not necessary as voters may change their minds at the subsequent special election and sufficient safeguards already exist in the recall statutes to protect recall signatories from deceit or fraud. These safeguards include the requirements that the recall petition contain a statement of purpose, that the circulators personally swear to the accuracy and truth of every page of the petition, and that the failure to turn the petition in before sixty days is punishable as a misdemeanor.
 
 [8]
 

 See
 
 NRS 306.015(3); 306.020(2); 306.030(2).
 

 By allowing a signatory to subsequently remove his or her name from a recall petition, however, NRS 306.015(5) clearly gives the electorate greater flexibility and voice in the exercise of
 
 *950
 
 its recall right. This procedure helps to avoid unnecessary special elections and provides direct recourse for when signatures are improperly obtained despite the existing safeguards. Accordingly, we conclude that the signature rescission right contained in NRS 306.015(5) safeguards the recall right, and thus “aids in the operation thereof.”
 

 The statistical sampling procedure
 

 Finally, the Citizens contend that NRS 306.035(2) and NRS 293.1276-.1279,
 
 [9]
 
 which allow the Secretary to use a statistical sampling procedure to make an initial determination of whether a recall petition has the requisite number of valid signatures, violates the Nevada Constitution. Specifically, the Citizens contend that statistical sampling generally undermines, rather than “aids,” the recall right because it detracts from the democratic heritage that every individual’s vote counts.
 

 By allowing the use of statistical sampling, however, NRS 306.040(1) clearly creates a more efficient, less costly and less time-consuming process. Further, the Citizens have presented no evidence showing that the statistical procedure utilized is inaccurate. Indeed, after ordering that the signatures on the Citizens’ first petition be fully verified, the Secretary found that in this case the statistical sampling procedure was accurate to within 0.25% of the actual number of verified signatures. This small discrepancy is indicative of the sampling procedure’s reliability and rebuts any insinuation that an individual’s vote might be overlooked by the procedure. Further, the sampling procedure outlined at NRS 293.1277 through 293.1279 contains several safeguards to ensure that the recall right is not infringed — including, (1) the requirement that the sample have at least 500 names; (2) the assurance that the sample is drawn at random; and (3) the requirement that a full verification be ordered if the sampling shows that 90-100% of the signatures required are valid. Accordingly, we conclude that the statistical sampling procedures provided for in
 
 *951
 
 NRS 306.035(2) and NRS 306.040(1) “aid in the operation” of the recall right.
 
 [10]
 

 Having found that the contested provisions “aid in the operation” of the recall right, we conclude that they are constitutional under the mandates of the Nevada Constitution.
 

 Whether the APA applied to the underlying hearing and whether the district court erred in excluding the Citizens’ additional exhibits
 

 The Citizens next contend that the judicial review hearing at the district court was not subject to the procedures outlined in the APA. Importantly for the Citizens, the APA provides that judicial review of an agency’s final decision is “[cjonfined to the record” that was in front of the agency.
 
 See
 
 NRS 233B.135(l)(b). Thus, if the hearing was subject to the APA, the district court had no discretion in deciding to exclude the additional exhibits the Citizens submitted.
 

 In general, the APA establishes the procedural requirements by which State agencies are to conduct their regulation-making and adjudication functions.
 
 See
 
 NRS 233B.020. The APA also establishes the procedures for judicial review of these functions.
 
 See
 
 NRS 233B.130-.150.
 

 Specifically, NRS 233B.130(l)(b) allows judicial review of an agency’s “final decision in a contested case.” A “contested case” is defined as:
 

 [A] proceeding ... in which the legal rights, duties or privileges of a party are required by law to be determined by an agency
 
 after an opportunity for hearing,
 
 or in which an administrative penalty may be imposed.
 

 NRS 233B.032 (emphasis added). The agency hearing must afford all parties an “opportunity . . . to respond and present evidence and argument on all issues.” NRS 233B.121.
 

 In Private Investigator’s Licensing Board v. Atherley, 98 Nev. 514, 515, 654 P.2d 1019, 1020 (1982), this court strictly con
 
 *952
 
 strued these requirements and held that because the statutes controlling the Private Investigator’s Licensing Board did not require “notice and an opportunity for hearing” before the Board made application determinations, the Board’s decisions were not “contested cases” for purposes of the APA.
 

 Similarly, the statutes controlling the Secretary’s review of a recall petition do not require a hearing offering contesting petitioners an opportunity to present evidence in support of their case.
 
 See
 
 NRS 293.12793 and 293.12795. NRS 293.12793 provides that if an appeal is filed with the Secretary contesting the verification of a petition, the Secretary need only “[c]onsider the allegations and conduct an investigation, if necessary.” NRS 293.12795(3), however, provides that after an appeal, the Secretary’s decision is “a final decision for the purposes of judicial review” and “may only be appealed in the first judicial district court.”
 
 [11]
 
 Although NRS 293.12793 and 293.12795 allow judicial review, they do not specify that the procedures of the APA should be used and, more importantly, do not require a hearing and, therefore, do not create a “contested case.” Accordingly, we conclude that the judicial review of a Secretary’s determination of a petition’s validity is not subject to the procedures of the APA.
 

 In this case, however, the district court recognized the inequity of strictly applying the APA, and therefore allowed the Citizens to present additional evidence. Accordingly, we conclude that the district court’s use of the APA here was harmless error because the Citizens were still permitted to advance additional evidence under traditional evidence rules. Even under traditional evidence rules, however, the Citizens contend that the district court abused its discretion by excluding the additional exhibits as “immaterial.”
 

 Under Nevada’s rules of evidence, “[ejvidence which is not relevant is not admissible.” NRS 48.025(2). Furthermore, the district court has broad discretion in determining whether evidence is relevant or otherwise admissible.
 
 See
 
 Prabhu v. Levine, 112 Nev. 1538, 1548, 930 P.2d 103, 110 (1996).
 

 In this case, the additional exhibits consisted of: (1) correspondence from the Secretary and news reports regarding the first peti
 
 *953
 
 tion; (2) affidavits of circulators regarding the difficulties of signature collection; and (3) historical and demographic data concerning recall petitions. Because these exhibits either did not relate to the second petition, the sole subject of the district court’s review, or were not necessary to the resolution of the constitutional questions considered, we conclude that the district court did not abuse its discretion in excluding the additional exhibits.
 

 CONCLUSION
 

 First, we conclude that the sixty-day limit on recall petition circulation does not violate the Federal Constitution. Further, we conclude that the sixty-day limit, the statutory provisions allowing for the rescission of signatures on a recall petition, and the statutory provisions allowing for the use of a statistical sampling to initially assess a petition’s validity do not violate the Nevada Constitution. Additionally, we conclude that the APA does not apply to judicial review of the Secretary’s final determination of an election petition under NRS 293.12795(3). Finally, we conclude that the district court did not abuse its discretion in excluding the additional exhibits proffered by the Citizens.
 

 Accordingly, we affirm the district court’s order, which affirmed the determination of the Secretary that the Citizens’ recall petition failed for insufficient signatures.
 
 [12]
 

 [1]
 

 Specifically, NRS 306.015(3) requires that “[t]he persons filing the notice of intent shall submit the petition that was circulated for signatures to the filing officer within 60 days after the date on which the notice of intent was filed.” Further, the failure to file the petition within the sixty days is punishable as a misdemeanor.
 

 [2]
 

 AIthough the recall right is a state-created right, we recognize that circulation of a recall petition involves political speech implicating the First Amendment.
 
 See, e.g.,
 
 Meyer v. Grant, 486 U.S. 414 (1988). Indeed, the Citizens analogize the sixty-day time limitation considered here to the Colorado statute considered in
 
 Meyer
 
 prohibiting the payment of circulators to help collect signatures for initiative petitions. There, the Court subjected the prohibition to strict scrutiny after noting that the regulation restricted political expression in two ways: (1) by limiting the “number of voices who will convey [the] message,” and therefore “the size of the audience they can reach”; and (2) by making it less likely that the circulators will gamer the number of signatures necessary, thus limiting the circulators’ “ability to make the matter the focus of statewide discussion.” 486 U.S. at 422-23. Unlike the regulation in
 
 Meyer,
 
 the sixty-day time limitation here does not substantively limit the petitioner’s message by regulating the number of voices able to convey that message. Instead, it is a nondiscriminatory procedural regulation like that considered in Burdick v. Takushi, 504 U.S. 428 (1992) and discussed below. Accordingly, we conclude that
 
 Meyer
 
 does not require us to apply strict scrutiny.
 

 [3]
 

 The Citizens also attack the applicability of the
 
 Burdick
 
 standard by noting that the regulation there was an “election” regulation, not a “petition circulation” regulation. We find this distinction unpersuasive because both types of regulations affect the same First Amendment rights and further the same state regulatory interests.
 

 [4]
 

 In an effort to rebut this argument, the Citizens argue that the two petitions, if considered together, contain well over the requisite number of valid signatures. However, without being able to determine the number of overlapping signatures between the petitions, the truth of this statement is uncertain at best, and thus unpersuasive. Further, NRS 306.015(3) prohibits the combining of an earlier petition with a later one.
 

 [5]
 

 The Citizens point out that these interests would be equally served by a longer time period and argue that the sixty-day limitation forces them to work in a frantic, “chaotic” effort. However, we have already held that sixty days does not impose a “severe” restriction and will not question whether a longer time period is perhaps more reasonable.
 
 See
 
 Anthony v. State of Nevada, 94 Nev. 337, 341, 580 P.2d 939, 941 (1978) (“[T]he judiciary will not declare an act void because it disagrees with the wisdom of the Legislature.”) Instead, we suggest that the Citizens seek legislative recourse for their argument.
 

 [6]
 

 The referendum procedure is utilized by the public to show dissatisfaction with a certain statute or resolution and, if successful, requires that the statute or resolution be approved by the public at the next general election.
 
 See generally
 
 Nev. Const. art. 19, §§ 2-6. The initiative procedure is used by the public to enact or amend an existing statute and, if successful, requires that the proposal be accepted at the next legislative session or, if rejected by the legislature, be approved by a majority of voters at the next election.
 
 See id.
 

 [7]
 

 Specifically, NRS 306.015(5) provides that “[a]ny person who signs a petition to recall any public officer may remove his name from the petition by submitting a request in writing to the county clerk at any time before the petition is submitted for the verification of the signatures thereon pursuant to NRS 306.035.”
 

 [8]
 

 The Citizens note that similar safeguards against misrepresentations do not exist to regulate the signature removal provisions of NRS 306.015(5). Our review, however, is focused on the provision’s constitutionality, not whether its safeguards are optimal.
 
 See
 
 Anthony v. State of Nevada, 94 Nev. 337, 341, 580 P.2d 939, 941 (1978) (“[T]he judiciary will not declare an act void because it disagrees with the wisdom of the Legislature”).
 

 [9]
 

 Specifically, NRS 306.035(2) provides that if a petition has the requisite number of raw signatures, it must be submitted to the county clerk for verification using the procedures outlined in NRS 293.1276 to 293.1279, inclusive. NRS 293.1277(2) then provides that “[i]f more than 500 names have been signed on the documents submitted to him, a county clerk shall examine the signatures by sampling [500 ofj them at random for verification.” Finally, NRS 293.1278 and 293.1279 provide that if the sample shows that the number of valid signatures is less than 90% of the required number, the Secretary shall deem the petition to have failed; if over 100%, the Secretary shall deem the petition to have qualified; if between 90-100%, the Secretary shall order the county clerk to verify all the signatures on the petition.
 

 [10]
 

 The Citizens also make the general argument that the regulations and procedures challenged were clearly not intended by the Nevada Constitution because the Constitution is silent with respect to these procedures. We conclude that this argument lacks merit because it is contrary to the plain language of art. 2, sec. 9, which grants the legislature broad authority to pass such legislation “as may aid the operation” of the recall right.
 
 See
 
 Charlie Brown Constr. Co. v. Boulder City, 106 Nev. 497, 503, 797 P.2d 946, 949 (1990)
 
 overruled on other grounds,
 
 Calloway v. City of Reno, 116 Nev. 250, 993 P.2d 1059 (2000) (courts are not permitted to go beyond the plain meaning of a statute);
 
 see also
 
 80-17 Op. Att’y Gen. 85, 88 (1980) (noting that Chapter 306 of the NRS properly fills in the details of how the recall right operates because “not every detail can be provided for or every problem anticipated in a constitution”).
 

 [11]
 

 Although this provision may be read to give the first judicial district court sole appellate jurisdiction, we conclude that the provision only requires an appeal to be filed in the court of the first judicial district located in Carson City.
 

 [12]
 

 The Honorable A. William Maupin, Justice, voluntarily recused himself from participation in the decision of this matter.