137 Nev., Advance Opinion 21

IN THE SUPREME COURT OF THE STATE OF NEVADA

THE LEGISLATURE OF THE STATE
OF NEVADA; THE STATE OF NEVADA
DEPARTMENT OF TAXATION; THE
STATE OF NEVADA DEPARTMENT
OF MOTOR VEHICLES; THE
HONORABLE NICOLE CANNIZZARO,
IN HER OFFICIAL CAPACITY AS
SENATE MAJORITY LEADER; THE
HONORABLE KATE MARSHALL, IN
HER OFFICIAL CAPACITY AS
PRESIDENT OF THE SENATE;
CLAIRE J. CLIFT, IN HER OFFICIAL
CAPACITY AS SECRETARY OF THE
SENATE; AND THE HONORABLE
STEVE SISOLAK, IN HIS OFFICIAL
CAPACITY AS GOVERNOR OF THE
STATE OF NEVADA,
Appellants/Cross-Respondents,
vs.
THE HONORABLE JAMES A.
SETTELMEYER, THE HONORABLE
JOE HARDY, THE HONORABLE
HEIDI SEEVERS GANSERT, THE
HONORABLE SCOTT T. HAMMOND,
THE HONORABLE PETE
GOICOECHEA, THE HONORABLE
BEN KIECKHEFER, THE
HONORABLE IRA D. HANSEN, AND
THE HONORABLE KEITH F.
PICKARD, IN THEIR OFFICIAL
CAPACITIES AS MEMBERS OF THE
SENATE OF THE STATE OF NEVADA
AND INDIVIDUALLY; GREAT BASIN
ENGINEERING CONTRACTORS, LLC,
A NEVADA LIMITED LIABILITY
COMPANY; GOODFELLOW
CORPORATION, A UTAH
CORPORATION QUALIFIED TO DO

No. 81924

FILED

MAY 13 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

BUSINESS IN THE STATE OF
NEVADA; KIMMIE CANDY COMPANY,
A NEVADA CORPORATION;
KEYSTONE CORP., A NEVADA
NONPROFIT CORPORATION;
NATIONAL FEDERATION OF
INDEPENDENT BUSINESS, A
CALIFORNIA NONPROFIT
CORPORATION QUALIFIED TO DO
BUSINESS IN THE STATE OF
NEVADA; NEVADA FRANCHISED
AUTO DEALERS ASSOCIATION, A
NEVADA NONPROFIT
CORPORATION; NEVADA TRUCKING
ASSOCIATION, INC., A NEVADA
NONPROFIT CORPORATION; AND
RETAIL ASSOCIATION OF NEVADA, A
NEVADA NONPROFIT
CORPORATION,
Respondents/Cross-Appellants.

Appeal and cross-appeal from a district court final judgment in a case involving constitutional challenges to legislation. First Judicial District Court, Carson City; James Todd Russell, Judge.

*Affirmed.*

Aaron D. Ford, Attorney General, and Craig A. Newby, Deputy Solicitor General, Carson City,
for Appellants/Cross-Respondents the State of Nevada Department of Taxation, the State of Nevada Department of Motor Vehicles, Kate Marshall, and Steve Sisolak.

Legislative Counsel Bureau, Legal Division, and Kevin C. Powers, General Counsel, Carson City,
for Appellants/Cross-Respondents the Legislature of the State of Nevada, Nicole Cannizzaro, and Claire J. Clift.

Allison MacKenzie, Ltd., and Karen A. Peterson and Justin M. Townsend, Carson City,
for Respondents/Cross-Appellants.

---

BEFORE THE SUPREME COURT, EN BANC.

## OPINION

By the Court, HARDESTY, C.J.:

Article 4, Section 18(2) of the Nevada Constitution requires the agreement of at least two-thirds of the members of each house of the Nevada Legislature to pass any bill "which creates, generates, or increases any public revenue in any form, including but not limited to taxes, fees, assessments and rates, or changes in the computation bases for taxes, fees, assessments and rates." In this case, the parties ask us to determine whether this supermajority provision applies to two bills passed in 2019 during the 80th session of the Nevada Legislature. Based on the plain language of the supermajority provision, we conclude that it applies to the subject bills because they create, generate, or increase public revenue. Because the bills did not pass by a two-thirds majority in the Senate, those portions of the bills that would require a supermajority vote are unconstitutional. We further conclude that the individual defendants are protected by legislative immunity under NRS 41.071 because the actions they performed were within the sphere of legitimate legislative activity. Because the district court correctly found the bills were unconstitutional and rejected the claims against the immune defendants, we affirm the district court's judgment in whole.

 

*Senate Bill 542: The Department of Motor Vehicles technology fee*

In 2015, the Legislature approved a bill adding a $1 technology fee to every Department of Motor Vehicles (DMV) transaction that was already subject to a fee. *See* 2015 Nev. Stat., ch. 394, § 3 at 2211; *see also* NRS 481.064 (2015) (codification of the bill). The bill had a sunset provision, such that the additional $1 fee would expire on June 30, 2020. *See* 2015 Nev. Stat., ch. 394, § 3 at 2213. Senate Bill 542, proposed during the 2019 legislative session, extended the sunset provision to June 30, 2022. The DMV would collect an estimated additional $6.9 million for each year of the extension. The Legislature did not subject the bill to a supermajority vote, and the Senate passed it by a 13 to 8 vote—1 vote short of a supermajority. 2019 Nev. Stat., ch. 400, § 1 at 2502.

*Senate Bill 551: Payroll tax computation under the modified business tax*

In 2015, the Legislature also approved a bill that reduces the rate of payroll taxes under Nevada's modified business tax (MBT) if tax revenues exceed fiscal projections by a certain amount. 2015 Nev. Stat., ch. 487, § 62 at 2896-97. The bill went into effect on July 1, 2015, codified at NRS 360.203. On October 11, 2018, the Department of Taxation published a news release stating that 2018 tax revenues exceeded the stated threshold and therefore the reduced payroll tax rates would go into effect on July 1, 2019.

In 2019, Senate Bill 551 proposed to repeal NRS 360.203 in its entirety, allowing the Department of Taxation to collect an estimated $98.2 million during the following biennium. When initially considered by the Senate, certain sections of the bill—2, 3, 37, and 39—required a supermajority vote to pass. After the Senate fell one vote short of a



supermajority, the bill was reconsidered without the supermajority requirement. The votes remained the same, 13 to 8, and it therefore passed with less than a supermajority. *See* 2019 Nev. Stat., ch. 537, § 39 at 3294.

*Proceedings in the district court*

After the Legislature declared Senate Bills 542 and 551 passed and the Governor signed them, all the senators who voted against the bills, along with businesses and other entities (collectively, the Senators), sued Senate Majority Leader Nicole Cannizzaro, Senate President Kate Marshall, Senate Secretary Claire J. Clift, and Governor Steve Sisolak (all in their official capacities); the Nevada Department of Taxation; and the DMV.[1] The Senators sought declarations that the supermajority provision applied to the bills and asked the district court to invalidate the bills because they did not receive a supermajority vote in the Senate. They also sought injunctive relief preventing the Department of Taxation and the DMV from collecting money pursuant to the bills. The complaint included requests for attorney fees and costs for each cause of action and in the prayer for relief.

The State moved to dismiss, arguing that the supermajority provision did not apply. To support its argument, it relied on a 2019 Legislative Counsel Bureau memorandum coming to the same conclusion. The Senators opposed the motion and moved for summary judgment. The parties briefed competing summary judgment motions, and Senator Cannizzaro and Senate Secretary Clift argued they were protected by legislative immunity.

---

[1]This opinion refers to these parties, along with the Legislature, which intervened as a party, *see* NRS 218F.720 (allowing the Legislature to protect its interests by intervening in cases), collectively as the State.

After a hearing, the district court's final order found both bills generated revenue and therefore were subject to the state constitution's supermajority provision. The district court reasoned that, "[b]ut for" the bills, the State would not have realized an additional approximate $14 million through the extended DMV fee and $98.2 million after removing the reduced computation rates under the MBT. As to the MBT bill, the district court granted the State's unopposed request for severance and invalidated only those sections subject to a supermajority vote. The DMV bill was fully invalidated. The district court denied the Senators' request for an award of attorney fees as special damages. The district court also dismissed the attorney fees and costs claim against the Legislature. It denied all of the Senators' claims as against Senator Cannizzaro, Senate President Marshall, Senate Secretary Clift, and Governor Sisolak (collectively, the individual defendants) and dismissed them from the action. The order allowed the Senators to move for a postjudgment award of attorney fees and costs against the Department of Taxation and/or the DMV, however.

The State contests the district court's conclusion that the supermajority provision applies to the subject bills and that they are therefore unconstitutional. In their cross-appeal, the Senators challenge the district court's denial of their requests for attorney fees and costs and other claims as against the individual defendants, as well as the dismissal of those defendants below. The district court stayed enforcement of its order and any proceedings on postjudgment requests for fees and costs pending the outcome of this appeal.

## DISCUSSION

*The supermajority provision applies based on its plain language*

The State's appeal centers on the interpretation of the supermajority provision as applied to Senate Bills 542 and 551, an issue we review de novo. *See Ramsey v. City of N. Las Vegas*, 133 Nev. 96, 98, 392 P.3d 614, 616 (2017) ("This court reviews questions of constitutional interpretation de novo."). Because we presume that statutes are constitutional, the Senators, as the parties challenging the bills' constitutionality, "bear[] the burden of making a clear showing of invalidity." *Sheriff of Washoe Cty. v. Martin*, 99 Nev. 336, 340, 662 P.2d 634, 637 (1983) (internal quotation marks omitted); *see also Citizens for Honest & Responsible Gov't v. Sec'y of State*, 116 Nev. 939, 946, 11 P.3d 121, 125 (2000) (citing *Martin* with approval).

Consonant with the axiomatic principle that "[i]t is emphatically the province and duty of the judicial department to say what the law is," *Marbury v. Madison*, 5 U.S. 137, 177 (1803), Nevada courts are the "ultimate interpreter" of the Nevada Constitution, *see Baker v. Carr*, 369 U.S. 186, 211 (1962) (discussing the United States Supreme Court and the United States Constitution); *see also MDC Rests., LLC v. Eighth Judicial Dist. Court*, 134 Nev. 315, 320-21, 419 P.3d 148, 152-53 (2018) (addressing this court's duty to resolve constitutional questions without deference to others). When interpreting a constitutional provision, our ultimate goal is "'to determine the public understanding of a legal text' leading up to and 'in the period after its enactment or ratification.'" *Pohlabel v. State*, 128 Nev. 1, 9, 268 P.3d 1264, 1269 (2012) (quoting *Strickland v. Waymire*, 126 Nev. 230, 234, 235 P.3d 605, 608 (2010) (further internal quotation marks omitted)); *see also Thomas v. Nev. Yellow Cab*

 

*Corp.*, 130 Nev. 484, 490, 327 P.3d 518, 522 (2014) ("[R]ecent precedents have established that we consider first and foremost the original public understanding of constitutional provisions, not some abstract purpose underlying them."). In doing so, we look to the provision's language; if it is plain, the text controls and we will apply it as written. *Ramsey*, 133 Nev. at 98, 392 P.3d at 617; *see also Miller v. Burk*, 124 Nev. 579, 590-92, 188 P.3d 1112, 1120-21 (2008) (refusing to consider other arguments when the plain language of a constitutional provision controlled). Thus, "when a constitutional provision's language is clear on its face, we will not go beyond that language in determining the voters' intent or to create an ambiguity when none exists." *Miller*, 124 Nev. at 590, 188 P.3d at 1120.

> The supermajority provision states,
>
> Except as otherwise provided in subsection 3, an affirmative vote of not fewer than two-thirds of the members elected to each House is necessary to pass a bill or joint resolution which creates, generates, or increases any public revenue in any form, including but not limited to taxes, fees, assessments and rates, or changes in the computation bases for taxes, fees, assessments and rates.

Nev. Const. art. 4, § 18(2).

The plain meaning of both "create" and "generate" is "to bring into existence," and the plain meaning of "increase" is "to become progressively greater (as in size, amount, number, or intensity)." *Merriam-Webster's Collegiate Dictionary* 293, 521, 631 (11th ed. 2020). These words plainly encompass a bill that results in the State receiving more public revenue than it would have realized without it, as the bill would "bring into existence" "progressively greater" public revenue. And, by using the word "any," the provision has broad application and applies to all bills that create,

generate, or increase public revenue *at any time*. *See In re Estate of Ella E. Horst Revocable Tr.*, 136 Nev., Adv. Op. 90, 478 P.3d 861, 865-66 (2020) (quoting 3A Shambie Singer, *Sutherland Statutes and Statutory Construction* § 67:2 (8th ed. 2019 update), for the proposition that "any," when used in a procedural law, means "any and all"); *Any, Black's Law Dictionary* (6th ed. 1990) (defining "any" as "one out of many" and "indiscriminately of whatever kind"). Applying this plain and broad language to the bills at issue, we conclude that Senate Bills 542 and 551 are subject to the supermajority requirement.[2]

The district court found, and the State agrees, that the DMV fee would raise about $7 million for each year of the sunset date's extension. By extending the sunset date on the additional $1 DMV fee, Senate Bill 542 created public revenue that otherwise would not exist. In other words, but for the bill, the State would not generate the roughly $14 million in revenue from the additional $1 DMV fee for the period of July 1, 2020, through June 30, 2022. Because the bill results in increased public revenue, it is subject to a supermajority vote despite the fact that the Legislature passed the bill before the original sunset date. Similarly, the State agrees that, by eliminating the reduced payroll tax rate set to take effect in July 2019, Senate Bill 551 generated $98.2 million in public revenue that otherwise would not exist. Like the DMV bill, but for the MBT bill, the State would not receive that increased revenue, and it is therefore subject to a

---

[2]We reject any contention that we should defer to the Legislature's interpretation of the supermajority provision. We give no such deference when a law's language is plain, as it is here. *See Indep. Am. Party of Nev. v. Lau*, 110 Nev. 1151, 1154-55, 880 P.2d 1391, 1393 (1994) (giving "no deference" to a coordinate government branch's interpretation of a statute when the statute's language was plain).

supermajority vote. Again, that result does not depend on whether the reduced payroll tax rate had taken effect when the Legislature passed Senate Bill 551. Because both bills create, generate, or increase public revenue such that the plain language of the supermajority provision applies, the district court correctly determined they were unconstitutionally passed in the Senate with less than a supermajority vote.

The State's arguments about how to interpret the supermajority provision are unconvincing. The mantra of the State's appeal is that, when passed, the two bills "did not change—but maintained" current revenue levels. It argues that revenue levels remained consistent, as the bills removed the reduced tax rate under the MBT and extended the sunset on the DMV fee *before* the reduced rate or original sunset date took effect. Based on that premise, the State contends the bills did not "create[ ], generate[ ], or increase[ ]" public revenue for purposes of the supermajority provision. It further argues that the supermajority provision only applies to bills that "directly bring[ ] into existence" new state revenue "in the first instance by imposing new or increased state taxes."

As stated above, however, that current revenue levels remained unchanged does not alter the fact that the bills "create[ ], generate[ ], or increase[ ]" public revenue within the plain meaning of those words. Adopting the State's contrary interpretation would also violate the settled rule against interpreting a law in a manner that renders part of it superfluous, as it would require us to ignore the constitutional provision's use of the word "any." *See Manuela H. v. Eighth Judicial Dist. Court*, 132 Nev. 1, 6-7, 365 P.3d 497, 501 (2016) (recognizing that, in applying a statute's plain language, this court will not interpret the law in a manner that renders any of its words superfluous); *S. Nev. Homebuilders Ass'n v.*

10

*Clark Cty.*, 121 Nev. 446, 449, 117 P.3d 171, 173 (2005) (same); *Charlie Brown Constr. Co. v. Boulder City*, 106 Nev. 497, 502, 797 P.2d 946, 949 (1990) (same), *overruled on other grounds by Calloway v. City of Reno*, 116 Nev. 250, 993 P.2d 1259 (2000). And accepting the State's argument that the provision only applies to bills that directly bring about new or increased taxes would require us to read language into the provision that it does not contain—a task we will not undertake. *See Berkson v. LePome*, 126 Nev. 492, 502, 245 P.3d 560, 567 (2010) (refusing to read language into a statute that the statute did not contain). Indeed, the provision contains no limiting language that supports the State's arguments in these regards.

As to the MBT bill, the district court also properly determined that severance was appropriate. *See Flamingo Paradise Gaming, LLC v. Chanos*, 125 Nev. 502, 515, 217 P.3d 546, 555 (2009) ("[I]t is 'the obligation of the judiciary to uphold the constitutionality of legislative enactments where it is possible to strike only the unconstitutional portions.'" (quoting *Rogers v. Heller*, 117 Nev. 169, 177, 18 P.3d 1034, 1039 (2001) (further internal quotation marks omitted))); *see also* NRS 0.020 (declaring Nevada laws to be severable). The only portions of the MBT bill that are unconstitutional are sections 2, 3, 37, and 39, as the remaining sections, "standing alone, can be given legal effect," and the State's arguments below in favor of severance show the Legislature's intent for "the remainder of the [bill] to stay in effect." *Flamingo Paradise*, 125 Nev. at 515, 217 P.3d at 555 (laying out the test for severability).

Based on the foregoing, we conclude that the district court correctly found in favor of the Senators on their declaratory and injunctive relief claims. We now address the Senators' cross-appeal.

*Legislative immunity protects the individual defendants*

The Senators challenge the district court's denial of their request for attorney fees from the individual defendants—Senator Cannizzaro, Senate President Marshall, Senate Secretary Clift, and Governor Sisolak—as well as those parties' dismissal below. The State asserts that the individual defendants have legislative immunity from the Senators' claims and the district court therefore properly rejected the Senators' claims against them and dismissed them from the action.[3]

We agree with the State that the individual defendants are entitled to legislative immunity. NRS 41.071(1)(h) codifies legislative immunity and protects those performing legislative functions "from having to defend themselves, from being held liable and from being questioned or sanctioned in administrative or judicial proceedings for speech, debate, deliberation and other actions performed within the sphere of legitimate legislative activity." Immunity applies to actions taken in regard to

---

[3]We have considered the State's argument that this court does not have jurisdiction over the cross-appeal and conclude it lacks merit for two reasons. First, the Senators are aggrieved because the district court did not afford them all the relief they sought. *See* NRAP 3A(a) ("A party who is aggrieved by an appealable judgment or order may appeal from that judgment or order . . . ."); *Ford v. Showboat Operating Co.*, 110 Nev. 752, 755-56, 877 P.2d 546, 548-49 (1994) (holding that a party must be aggrieved by a lower court's judgment and seek to alter the rights of the parties to that judgment for this court to have appellate jurisdiction). Second, whether the individual defendants are entitled to legislative immunity is a substantive issue to be decided by the court, not a limit on the court's jurisdiction. *See* *Powell v. McCormack*, 395 U.S. 486, 504-05 & n.25 (1969) (reviewing on appeal whether legislative immunity applied and holding that legislative immunity does not absolve a party "of the responsibility of filing a motion to dismiss" because the court "must still determine the applicability of [legislative immunity] to [a] plaintiff's action").

legislative measures including, but not limited to, "drafting," "revising," amending," "supporting," "approving," "or voting in any form." NRS 41.071(5)(a), (6). The immunity applies to the Legislature, individual legislators, the Legislative Counsel Bureau, and those who "take[ ] or perform[ ] any actions within the sphere of legitimate legislative activity that would be protected if taken or performed by any [legislator]." NRS 41.071(7)(c), (7)(d)(2).

The Senators contend that legislative immunity does not apply in this case. They argue that the individual defendants actively circumvented constitutional requirements to pass the subject bills such that their actions are not "within the sphere of legitimate legislative activity." Our immunity jurisprudence has not discussed NRS 41.071 and the "sphere of legitimate legislative activity." NRS 41.071(3), however, instructs that "the interpretation and application given to the constitutional doctrines of . . . legislative privilege and immunity under the Speech or Debate Clause [of the United States Constitution] must be considered to be persuasive authority."

In addressing NRS 41.071(3)'s federal counterpart, the United States Supreme Court has said that "[w]hether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). But "[l]egislative acts are not all-encompassing." *Gravel v. United States*, 408 U.S. 606, 625 (1972). To be protected, the acts "must be an integral part of the deliberative and communicative processes by which [legislators] participate in committee and House [or Senate] proceedings with respect to

SUPREME COURT
OF
NEVADA

(O) 1947A

the consideration and passage or rejection of proposed legislation." *Id.*; *see also* 72 Am. Jur. 2d *States, Etc.* § 61 (Feb. 2021 update) (providing that courts look, in part, to whether the challenged acts were an integral part of business before the legislature to determine if a party has legislative immunity); 14A C.J.S. *Civil Rights* § 480 (Mar. 2021 update) (discussing legislative immunity from civil rights claims and stating that, to determine whether an action is within the sphere of immunity, courts look to "whether [the act] bears all the hallmarks of traditional legislation"). Thus, protected actions include "only those things 'generally done in a session of the House . . . in relation to the business before it.'" *United States v. Brewster*, 408 U.S. 501, 512-13 (1972) (quoting *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880)).

Here, the individual defendants were performing basic legislative functions—proposing, amending, voting on, and passing legislation—such that their actions fell within the sphere of legitimate legislative activity.[4] *See* NRS 41.071(5); *see also Brewster*, 408 U.S. at 512-

---

[4]These actions are also dissimilar from those other courts have found to be outside the sphere of legitimate legislative activity. *See, e.g.*, *Hutchinson v. Proxmire*, 443 U.S. 111, 130 (1979) (concluding legislative immunity did not protect a legislator from a lawsuit regarding a newsletter and press release, as those were not actions within the sphere of legitimate legislative activity, but recognizing that immunity would apply if the same information was given during a speech before the Senate); *Brewster*, 408 U.S. at 526 (holding that a legislator accepting a bribe, even when accepted in exchange "for the performance of a legislative act," is not part of the legislative process); *Olson v. Lesch*, 931 N.W.2d 832, 838 (Minn. Ct. App. 2019) (concluding that a legislator's letter to the mayor was not within the sphere of legitimate legislative activity because it did not address legislative business, the jurisdiction, or executive appointments and was instead personal or political in nature).

13. They are therefore protected by legislative immunity from the Senators' substantive claims as well as their requests for attorney fees and costs.[5] *See Supreme Court of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 731 (1980) (recognizing that, if legislative immunity applies, it protects the immune parties "from suits for either prospective relief or damages"). This immunity extends to Senate President Marshall and Governor Sisolak, even though they are members of the executive branch, as the Senators only named them as defendants based on actions they took as part of the legislative process. *See* NRS 41.071(7)(d)(2); *Bogan*, 523 U.S. at 55 (recognizing "that officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions," including those considered "integral steps in the legislative process"). Indeed, the amended complaint alleged that Senate President Marshall "sign[ed]" the bills "passed by the Senate in conformity with the Nevada Constitution" and that Governor Sisolak "approv[ed] and sign[ed] bills passed by the Legislature in conformity with the Nevada Constitution." The district court's denial of the Senators' claims against the individual defendants and

---

[5]Because intent is irrelevant, we do not consider the Senators' argument that the individual parties acted in bad faith by not subjecting the bills to a supermajority vote. *See Bogan*, 523 U.S. at 54. We also do not consider the Senators' arguments regarding *Romer v. Colorado General Assembly*, 810 P.2d 215 (Colo. 1991), as that case addresses the Colorado Constitution's legislative immunity provision rather than that of the United States' Constitution. *See* NRS 41.071(3) (providing that interpretations of the United States Constitution's counterpart to Nevada's legislative immunity statute are persuasive authority without mentioning interpretations of other states' legislative immunity provisions).

its dismissal of those parties was therefore proper.[6] *See Harrison v. Roitman*, 131 Nev. 915, 917, 362 P.3d 1138, 1139 (2015) (reviewing the application of immunity de novo); *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005) (reviewing summary judgments de novo).

## CONCLUSION

Senate Bills 542 and 551 each "generate[ ], create[ ], or increase[ ]" public revenue such that Article 4, Section 18(2) of the Nevada Constitution applies to the bills. Thus, both houses of the Legislature were required to pass the bills by a two-thirds vote to satisfy the Constitution. Because the Senate did not do so, the bills are unconstitutional and the district court properly granted the Senators' requests for declaratory and injunctive relief to stop their enforcement. The district court also properly severed the nonoffending portions of Senate Bill 551. We further conclude that the district court's rejection of the Senators' claims and requests for attorney fees and costs against the individual defendants and its dismissal of those parties were proper, given that the individual defendants are

---

[6]The district court rejected the Senators' claims against the individual defendants and dismissed them because it found that NRS 218F.720(1)(b) barred any attorney fees and costs award against those parties and that the Senators failed to show those parties acted in bad faith. Although we resolve the cross-appeal based on legislative immunity, we may still affirm the district court's judgment. *See Pack v. LaTourette*, 128 Nev. 264, 267, 277 P.3d 1246, 1248 (2012) ("[T]his court will affirm the order of the district court if it reached the correct result, albeit for different reasons." (alteration in original) (quoting *Rosenstein v. Steele*, 103 Nev. 571, 575, 747 P.2d 230, 233 (1987))).

protected by legislative immunity under NRS 41.071(3). We therefore affirm the judgment of the district court in whole.[7]

_____, C.J.
Hardesty

We concur:

_____, J.
Parraguirre

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Silver

_____, J.
Pickering

_____, J.
Herndon

---

[7]We grant the Senators' January 6, 2021, motion to amend the caption of this case to add Senator Nicole Cannizzaro, Senate President Kate Marshall, Senate Secretary Claire J. Clift, and Governor Steve Sisolak in their official capacities as appellants/cross-respondents. The clerk of the court shall therefore amend the caption on this docket to conform with the caption on this opinion.

SUPREME COURT
OF
NEVADA

(O) 1947A