HARRY H. NADJARIAN AND CHERYL NADJARIAN, HUSBAND AND WIFE, APPELLANTS, v. DESERT PALACE, INC., DBA CAESARS TAHOE, RESPONDENT.

No. 22592

May 25, 1995                    895 P.2d 1291

*Jack Sheehan,* Minden, for Appellants.

*Scarpello & Alling* and *Richard Glasson,* Stateline, for Respondent.

---

[3]THE HONORABLE CLIFF YOUNG, Justice, voluntarily recused himself from participation in the decision of these appeals.

## OPINION

By the Court, SPRINGER, J.:

In this appeal we construe NRS 651.010,[1] which limits a hotel's liability for theft, loss, damage or destruction of "property left in the room of any guest."

The Nadjarians claim that they lost $24,800.62 worth of personal property while they were hotel guests at Caesars Tahoe.[2] Caesars invited the Nadjarians as "VIP's" to attend a New Year's Eve gala event and provided them with a complimentary room. Caesars assigned a special room to the Nadjarians. They checked into that room and put their personal property in the room. When they returned to their room the Nadjarians found that their key would not unlock the door to their room. They knocked on their door and were greeted by a stranger, who was then occupying *their* room. They advised the hotel manager of their plight, and

---

[1]NRS 651.010 provides, in pertinent part:

    1. No *owner* or *keeper* of any hotel, inn, motel, motor court, boardinghouse or lodginghouse in this state is civilly liable for the theft, loss, damage or destruction of any property left in the room of any guest of such an establishment because of theft, burglary, fire or otherwise, in the absence of gross neglect by the owner or keeper.

    . . . .

    3. The liability of the owner or keeper under this section does not exceed the sum of $750 for any property of an individual guest, unless the owner or keeper receives the property for deposit for safekeeping and consents to assume a liability greater than $750 for its theft, loss, damage, or destruction in a written agreement in which the guest specifies the value of the property.

[2]The facts in this case are a bit "sketchy." Neither Nadjarians' opening brief nor Caesars' answering brief tells the court the essential facts of this case, namely, the manner in which the Nadjarians' personal property became subject to "loss, damage or destruction." We learn a little about these vital facts in Nadjarians' reply brief, and we take these facts as the basis for concluding that further elaboration of the facts are necessary in this case before a reasoned judgment can be made on Caesars' innkeeper liability.

he assigned a new room to the Nadjarians. When in due course hotel personnel transferred the Nadjarians' personal property from their former room to the newly-assigned room, they delivered only a ski bag and a sweater. Missing from the Nadjarians' property, which hotel personnel moved from the original room, were the clothes that the Nadjarians planned to wear to the gala event and a number of other personal items of considerable value. The Nadjarians sued to recover the value of this personal property. Summary judgment was granted in favor of Caesars based on NRS 651.010.

Caesars is not entitled to summary judgment in this case unless NRS 651.010 were to be incorrectly read as imposing a statutory limitation on *all* claims by guests against innkeepers for loss of property which occurred on the innkeeper's premises, no matter what the circumstances of the loss might be. NRS 651.010 is not this broad—it applies only to a certain, strictly defined kind of loss, namely, the loss of "property left in the room of any guest." Under the facts of this case, it is apparent that at some juncture Caesars took custody of the Nadjarians' property for the purpose of transferring it from one room to the other. If the property was in fact lost during the process of Caesars' transferring it from one room to the other, then the loss arose while the property was in the custody of the hotel and not at a time when it could be accurately described as "property left in the room of any guest," as required by NRS 651.010(1).[3] There is enough question as to the status of this property at the time of its loss to say that Caesars is not entitled to judgment as a matter of law on the question of whether the protection of NRS 651.010 applies in this case because a number of questions of fact must be resolved before a proper judgment can be reached.

By the wording of the statute, whether NRS 651.010 can be applied in this case depends on whether the loss of the property can be connected to the Nadjarians having "left" their property in *their* room. At least one possible scenario comes to mind in which a fact-finder would have to conclude that the property in question was not "left-in-the-room" property and, so, not subject to application of NRS 651.010: NRS 651.010 would not apply if at the time the property was lost Caesars had become a *bailee* of the property by taking custody or control of the property. The sketchy facts in this case certainly admit of the possibility that when Caesars discovered that it had mistakenly checked

---

[3]It is possible that some of the property might have been lost before Caesars took custody of the Nadjarians' property; but, again, the facts in this case are unclear, and the need for a trial on the merits, at least at this juncture, is apparent.

the Nadjarians out of their assigned room, hotel management intervened and (without the knowledge or consent of the Nadjarians) exercised some form of custody or control over the Nadjarians' property, probably in the course of moving the Nadjarians' property to the newly-assigned room. If this were the case, then Caesars would be a bailee of the property, and the common law, rather than NRS 651.010, would apply.

There is certainly a strong possibility that evidence adduced at a trial would show that Caesars did in fact become a bailee of the Nadjarians' property. Caesars changed the locking mechanism so that the Nadjarians were denied access to the room that had originally been assigned to them and which they had occupied. After Caesars re-keyed the door to the room where the property was last known to be, the Nadjarians had no access to the room nor to their property. Under these circumstances it would be up to Caesars to explain what happened to the property. At trial, Caesars might be compelled to admit that at some juncture hotel personnel had control or possession of the Nadjarians' property; or, perhaps, a fact finder might infer from the evidence that Caesars had possession or control over the Nadjarians' property merely by denying to the Nadjarians access to their room.

If, at trial, the property were found to have been lost while in the possession or control of the innkeeper, then the law of bailment and common law innkeeper liability would necessarily apply in this case rather than the "left-in-the-room-by-the-guest" exception to common law liability provided for in NRS 651.010.

With respect to the bailment question, the Nadjarians' claim is controlled by Cloward v. Pappas, 79 Nev. 482, 387 P.2d 97 (1963), in which claims were made by guests against an innkeeper for two kinds of losses. One claim was for personal property that the guests had "left in their motel room[]" during a motel fire. Id. at 485, 387 P.2d at 99. The other Cloward claim was that the innkeeper was a bailee of other guest property that had not been "left in the room," namely, the guests' car, and that the innkeeper was legally liable under the common law liability of an innkeeper.

In Cloward, this court affirmed the trial court's defense judgment, which applied NRS 651.010 to the loss of the guest property "left in the room" and affirmed the trial court's holding that the innkeeper was not guilty of negligence, much less the "gross negligence" demanded by the statute.

In Cloward, this court also affirmed the trial court's judgment in favor of the defendant innkeeper on the guests' claim that the innkeeper was liable as a bailee for loss of the car. The Cloward decision relating to the innkeeper's lack of responsibility for loss of the car was not, however, based on the immunity granted by

NRS 651.010 but, rather, on the trial court's conclusion of fact that the guests' car was not the subject of a bailment.

Obviously, the guests' *car* in *Cloward* was not left-in-the-room property, so that application of NRS 651.010 was not a question. The trial court denied liability for loss of the car under the guests' bailment claim on the ground that the innkeeper was clearly not a bailee of a car that had been parked by the guests in a carport adjoining their motel room. This court correctly affirmed the trial court's conclusion that such an arrangement did not constitute a bailment; but, in doing so, this court also recognized that common law liability would be imposed if a bailment *had* been established.

The *Cloward* court characterized the guests' claim for the loss of the car as being "based on a common law concept that an innkeeper is liable as an insurer for the loss of his guests' personal property." *Id.* at 483, 387 P.2d at 97-98. This court went on to define an innkeeper's common law liability in these terms:

> In general terms it is that an innkeeper is practically an insurer of the safety of property entrusted to his care by a guest and, in the event of loss, he may exonerate himself from liability only by showing that such loss or injury resulted from an act of God, or of the public enemy, or from the fault of the guest himself.

*Id.* at 486, 387 P.2d at 99. This court ruled in *Cloward* that the "possession and control of the car remained with" the guest and that, consequently, the "lower court did not err in failing to apply the common law insurer's liability rule." *Id.* One must assume in reading *Cloward* that, conversely, if the "possession and control" of the property had *not* remained with the guest, but, rather, had come into the possession and control of the innkeeper at the time of the loss, common law innkeeper's liability would have to be applied.

In short, there are questions of fact here relating to whether Caesars was a bailee of the Nadjarians' property at the time of its loss. If Caesars did have possession and control of the Nadjarians' property at the time of its loss, the common law insurer's liability rule would apply, and Caesars would not be entitled to the protection of NRS 651.010. Until the question of whether Caesars was a bailee of the Nadjarians' property at the time of its loss is resolved, Caesars cannot have summary judgment in its favor. We reverse the summary judgment and remand the matter to the district court for a trial on this factual issue.

YOUNG, SHEARING and ROSE, JJ., concur.

STEFFEN, C. J., concurring:

I concur in the majority opinion insofar as it reverses the summary judgment entered below, but write separately because I do not believe the majority opinion provides a sufficient prospect for relief to the Nadjarians upon remand.

When Caesars mistakenly checked the Nadjarians out of their assigned room and re-keyed the room for occupancy by another guest, the Nadjarians were effectively "evicted" from the room in which their personal property was secured. Undoubtedly, the loss of the Nadjarians' property occurred as a result of Caesars having checked them out of their room prematurely, thus exposing the Nadjarians' property to any number of invitations to theft.

Mr. and Mrs. Nadjarian were specifically invited to Caesars as VIP guests. During the course of their stay, they managed to lose $33,000.00 which the Nadjarians had obtained from Caesars through execution of a series of eighteen negotiable instruments. These instruments were later dishonored when presented for payment through normal banking procedures. Apparently, under the circumstances of this case, the Nadjarians were unable to perceive fairness in Caesars causing the loss of their valuable personal property and thereafter insisting on full payment of the negotiable instruments. The Nadjarians claim that their personal property was valued at $24,800.63.

During the course of their stay at Caesars, the Nadjarians were wrongfully, albeit mistakenly, locked out of their room and the room was assigned to another guest. In the process, the Nadjarians' property was lost or stolen. Under these circumstances, and since the property could have been (at least theoretically) stolen or mistakenly taken from the Nadjarians' room before it was reassigned to another guest, I believe that Caesars should be estopped from asserting NRS 651.010 as a defense to an offset to the gambling debts owed to Caesars by the-Nadjarians.[1] "Estoppel is an equitable doctrine invoked to avoid injustice in particular cases." Heckler v. Community Health Services of Crawford County, Inc., 467 U.S. 51, 59 (1984). I do not believe that the facts of this case should be allowed to provide a basis for Caesars to present evidence within its exclusive province tending to show that the Nadjarians' property was taken or misplaced through unauthorized or negligent entry into the room while it was still assigned to the Nadjarians, thus paving the way for the limited liability provided by NRS 651.010.

---

[1]Throughout this concurring opinion, I have assumed that Caesars continues to claim a legal right to collect on the instruments of debt executed by the Nadjarians in the course of losing $33,000 at Caesars. If I am in error in this premise, then the Nadjarians should simply be required to prove the actual value of their lost property and receive a judgment for that amount rather than an offset against their indebtedness to Caesars.

The risk addressed by NRS 651.010 concerns valuable property that guests may leave unattended in their rooms. The statute was not designed to protect an innkeeper who deprives guests of their assigned rooms and re-keys the rooms for other guests, thus exposing a guest's property to theft or loss. Such protection would surely violate public policy and considerations of equity, especially where the innkeeper adds insult to injury by disallowing offsets to gaming losses. The Nadjarians may reasonably be held to the risk that property left in their assigned room, to which they (and certain identifiable Caesars' personnel) alone have access, could be stolen through unauthorized entry or dishonesty among Caesars' employees having access to the room. They could hardly be held to the risk of losing their property as a result of being erroneously excluded from their assigned room while it was given to another guest with the Nadjarians' property still in the room. In short, the room was no longer the Nadjarians, and it was impossible for them to have left property in *their* room. Under those circumstances, NRS 651.010 should not apply.

For the reasons noted above and in the majority opinion, it is clear that this action was not suitable for summary disposition. Moreover, I am uncomfortable with the majority's willingness, upon remand, to have the Nadjarians' recovery or right of offset depend upon proof of a bailment. Although the majority indicates that at trial it would be Caesars' obligation to explain what happened to the property, I do not consider this sufficient assurance that an accurate explanation will be forthcoming. Moreover, given the fact that the Nadjarians were essentially evicted from the room containing their possessions, I would rule that a bailment arose by operation of law. *See* Christensen v. Hoover, 643 P.2d 525, 529 (Colo. 1982). I would also rule that the loss or theft of the Nadjarians' property is presumed to be Caesars' fault as a matter of law, *see* Alamo Airways, Inc. v. Benum, 78 Nev. 384, 387-98, 374 P.2d 684, 686 (1962), since there has been no trace of the property from the time the Nadjarians' room was negligently reassigned to another hotel guest. As the loss of the Nadjarians' property should be presumed to be proximately caused by Caesars' negligence as bailee, the Nadjarians should be entitled to an offset of the actual value of their property against the gambling debt owed by the Nadjarians to Caesars. *See* Interstate Brands Corp. v. Cannon, 708 P.2d 573, 576 (Mont. 1985) (where value of goods is unknown or undeclared to bailee, the measure of damages is actual value of the goods). Thus, in my view, the only substantial question for determination upon remand should be the actual value of the Nadjarians' property.

This is an unusual case and the ruling of the case should be fact-specific. I am confident that it is not the intention of this

court, either the majority or this concurring justice, to emasculate the protection afforded to Nevada innkeepers under NRS 651.010.

