MARCOS ARGUELLO, APPELLANT, v. SUNSET STATION, INC., A NEVADA CORPORATION DBA SUNSET STATION HOTEL & CASINO, RESPONDENT.

No. 54823

June 2, 2011 252 P.3d 206

*Law Office of Julie A. Mersch* and *Julie A. Mersch*, Las Vegas, for Appellant.

*Cisneros Clayson & Marias* and *Scott B. Van Alfen*, Las Vegas, for Respondent.

Before SAITTA, HARDESTY and PARRAGUIRRE, JJ.

## OPINION

*Per Curiam:*

In this appeal, we primarily consider the scope of NRS 651.010(1), which limits the liability of hotels for "the theft, loss, damage or destruction of any property brought by a patron upon the premises or left in a motor vehicle upon the premises . . . in the absence of gross neglect by the owner or keeper" of the hotel. In particular, we consider whether NRS 651.010(1) shields a hotel from liability arising out of the theft of and damage to a guest's motor vehicle that was parked in the hotel's valet parking lot. We conclude that it does not.

### FACTS AND PROCEDURAL HISTORY

In 2006, appellant Marcos Arguello drove his vehicle to respondent Sunset Station, Inc., d.b.a. Sunset Station Hotel & Casino, gave his keys to a valet attendant, and received a claim ticket for his vehicle. A few hours later, when Arguello attempted to retrieve his vehicle, it was determined that an unknown party had stolen it from the valet parking lot. The vehicle was recovered the following day in a stripped condition. Arguello then submitted a claim for the loss of his vehicle to his insurer, Farmer's Insurance, and Farmer's issued a check to Arguello in the amount of $20,434.98.

Thereafter, Arguello filed a lawsuit in district court against Sunset Station, alleging negligence and breach of a bailment contract. Arguello sought damages exceeding $10,000 for, among other things, the loss of the use of his vehicle and the cost of customizations made to the vehicle.

Sunset Station moved for summary judgment, arguing that NRS 651.010 shielded it from liability for the theft of Arguello's vehicle and that Arguello did not have standing to sue because Farmer's became subrogated to the rights of Arguello when it issued a check for his insurance claim. The district court determined that NRS 651.010(1) shielded Sunset Station from liability arising out of the theft of Arguello's vehicle and entered summary judgment in favor of Sunset Station.[1] This appeal followed.

---

[1]The district court did not specifically address whether Arguello has standing to file suit.

## DISCUSSION

### Standard of review

We review de novo whether the district court appropriately granted summary judgment. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is appropriate "when the pleadings and other evidence on file demonstrate that no 'genuine issue as to any material fact [remains] and that the moving party is entitled to a judgment as a matter of law.' " *Id.* (alteration in original) (quoting NRCP 56(c)).

Standing is a question of law reviewed de novo. *Citizens for Cold Springs v. City of Reno*, 125 Nev. 625, 629-31, 218 P.3d 847, 850-51 (2009) (applying de novo review in deciding upon whom a statute conferred standing). "[Q]uestions of statutory construction, including the meaning and scope of a statute, are questions of law, which this court reviews de novo." *City of Reno v. Reno Gazette-Journal*, 119 Nev. 55, 58, 63 P.3d 1147, 1148 (2003).

### Standing and subrogation

As a threshold argument, Sunset Station asserts that Arguello lacks standing to sue because he accepted compensation from Farmer's for the theft of his vehicle. Thus, according to Sunset Station, pursuant to the doctrine of subrogation, Farmer's is the only party that has standing to bring a lawsuit for damages arising from the theft of Arguello's vehicle. We disagree.

#### Arguello is a real party in interest with standing to sue

NRCP 17(a) provides that "[e]very action shall be prosecuted in the name of the real party in interest." A real party in interest "is one who possesses the right to enforce the claim and has a significant interest in the litigation." *Szilagyi v. Testa*, 99 Nev. 834, 838, 673 P.2d 495, 498 (1983). The inquiry into whether a party is a real party in interest overlaps with the question of standing. *Id.*

Subrogation is "[t]he principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy." *Black's Law Dictionary* 1563-64 (9th ed. 2009). "[A]n insurer that pays its insured *in full* for claimed losses is subrogated by operation of law to the rights, if any, which the insured may have had against the tortfeasor be-

fore payment was made." *Duboise v. State Farm Mut. Auto. Ins.*, 96 Nev. 877, 879, 619 P.2d 1223, 1224 (1980) (emphasis added). Such a circumstance is known as "total subrogation." *Valley Power Co. v. Toiyabe Supply*, 80 Nev. 458, 461, 396 P.2d 137, 138 (1964). "In such a case the insurer . . . is the sole party in interest, and the only one who may assert a claim against those thought to be ultimately liable." *Id.* It is widely recognized, however, that if the insurer "has paid only part of the loss, both the insured and insurer . . . have substantive rights against the tortfeasor which qualify them as real parties in interest." *United States v. Aetna Surety Co.*, 338 U.S. 366, 381 (1949); *see Amica Mut. Ins. Co. v. Maloney*, 903 P.2d 834, 838 (N.M. 1995) ("When the amounts paid by the insurer under the policy cover only part of the insured's loss, leaving an excess loss to be made good by the tortfeasor, the insured retains the right of action for the entire loss.").

Arguello received a check for $20,434.98 from Farmer's. This figure constitutes Farmer's valuation of Arguello's vehicle, less his $500 deductible. In his complaint, Arguello sought damages for, among other things, the loss of the use of the vehicle and the amount he had paid for customizations to his vehicle. Arguello had not been compensated by Farmer's for these alleged damages. As such, Arguello was only partially compensated by Farmer's, and therefore, he retains the right to pursue an action against Sunset Station for the full amount of his recoverable losses. If Arguello receives a damages award that fully compensates him for such losses, then Farmer's may be entitled to reimbursement of its payments to him, but his right to first sue Sunset Station for those losses is unaffected. *See Max v. Allright Corp.*, 930 P.2d 1010, 1013 (Ariz. Ct. App. 1997) (" 'The general rule is that where the loss exceeds the amount of insurance paid, the insured may sue in his own name and recover the full amount of the loss, the question of the distribution [of the proceeds] being a matter between the insured and the insurer only.' " (quoting *Bryan v. Southern Pacific Company*, 286 P.2d 761, 766-67 (Ariz. 1955))). Accordingly, because Arguello possesses the right to enforce his claims and has a significant interest in the litigation, we conclude that he is a real party in interest with standing to sue Sunset Station for the loss of his vehicle.

*NRS 651.010 does not shield Sunset Station from potential liability*

Arguello contends that the district court erred when it granted summary judgment based on its determination that NRS 651.010 protected Sunset Station against liability arising from the theft of Arguello's vehicle from its valet parking lot. We agree and reverse.

*NRS 651.010 does not apply to motor vehicles*

Our goal in construing statutes is to effectuate the Legislature's intent. *Salas v. Allstate Rent-A-Car, Inc.*, 116 Nev. 1165, 1168, 14 P.3d 511, 513 (2000). When interpreting a statute, we look first to its plain language. *Id.* at 1168, 14 P.3d at 513-14. As we have explained, "this court must give [a statute's] terms their plain meaning, considering its provisions as a whole so as to read them in a way that would not render words or phrases superfluous or make a provision nugatory." *Southern Nev. Homebuilders v. Clark County*, 121 Nev. 446, 449, 117 P.3d 171, 173 (2005) (internal quotation omitted).

NRS 651.010 provides:

> 1. An owner or keeper of any hotel, inn, motel, motor court, boardinghouse or lodging house in this State is not civilly liable for the theft, loss, damage or destruction of any property brought by a patron upon the premises or left in a motor vehicle upon the premises because of theft, burglary, fire or otherwise, in the absence of gross neglect by the owner or keeper.
>
> 2. An owner or keeper of any hotel, inn, motel, motor court, boardinghouse or lodging house in this State is not civilly liable for the theft, loss, damage or destruction of any property of a guest left in a guest room if:
>
> (a) The owner or keeper provides a fireproof safe or vault in which guests may deposit property for safekeeping;
>
> (b) Notice of this service is personally given to a guest or posted in the office and the guest's room; and
>
> (c) The property is not offered for deposit in the safe or vault by a guest,
> unless the owner or keeper is grossly negligent.
>
> 3. An owner or keeper is not obligated to receive property to deposit for safekeeping which exceeds $750 in value or is of a size which cannot easily fit within the safe or vault.
>
> 4. The liability of the owner or keeper does not exceed the sum of $750 for any property, including, but not limited to, property which is not deposited in a safe or vault because it cannot easily fit within the safe or vault, of an individual patron or guest, unless the owner or keeper receives the property for deposit for safekeeping and consents to assume a liability greater than $750 for its theft, loss, damage or destruction in a written agreement in which the patron or guest specifies the value of the property.

We have not had occasion to construe the most recent amendment to NRS 651.010, which revised the language of subsection 1 to provide that it covers "any property brought by a patron upon the premises or left in a motor vehicle upon the premises."[2] 1995 Nev. Stat., ch. 691, § 9, at 2670.

Read in isolation, the broad language in NRS 651.010(1) referencing "any property" might give the impression that the statute applies to all property—including motor vehicles. Read as a whole, however, the statute unambiguously places motor vehicles outside of its scope by including the phrase "or left in a motor vehicle upon the premises."[3] NRS 651.010(1). If the Legislature intended NRS 651.010(1) to protect innkeepers from civil liability for damage to motor vehicles, it would not have needed to include the phrase "or left in a motor vehicle upon the premises" because the preceding phrase, "any property brought by a patron upon the premises," would necessarily have included motor vehicles. Moreover, interpreting NRS 651.010(1) to extend to motor vehicles would lead to the illogical conclusion that a motor vehicle is among the type of property that could be "left in a motor vehicle." In other words, the inclusion of the language "or left in a motor vehicle upon the premises" shows that the Legislature neither contemplated nor intended for the statute to apply to the theft of or damage to motor vehicles.

Thus, the statute cannot be read to extend to motor vehicles because doing so would require us to ignore the Legislature's inclusion of the phrase "or left in a motor vehicle upon the premises," which, as discussed above, absurdly limits the scope of the statute. Under well-established canons of statutory interpretation, we must not render any of the phrases of NRS 651.010(1) superfluous. *See Southern Nev. Homebuilders*, 121 Nev. at 449, 117 P.3d at 173.

Furthermore, reading the provisions of NRS 651.010 as a whole, as we must, reveals other indications that NRS 651.010(1) was not intended to apply to motor vehicles. Subsections 2 and 3 discuss safes and vaults in which items can be deposited for safekeeping. Subsection 4 imposes a $750 liability limit for gross neglect, an amount dwarfed by the value of most vehicles. Subsection 4 also provides that a hotel cannot be held liable in an amount greater than $750 unless it consents and the guest speci-

---

[2]In *Cloward v. Pappas*, 79 Nev. 482, 483 n.1, 387 P.2d 97, 97 n.1 (1963), *Tienda v. Holiday Casino, Inc.*, 109 Nev. 507, 510-11, 853 P.2d 106, 108 (1993), and *Nadjarian v. Desert Palace, Inc.*, 111 Nev. 763, 764 n.1, 895 P.2d 1291, 1292 n.1 (1995), we considered prior versions of NRS 651.010.

[3]NRS 651.005 provides that " 'premises' includes, but is not limited to, all buildings, improvements, equipment and facilities, including any parking lot . . . ."

fies, in writing, the value of the property for which the hotel is assuming responsibility. The foregoing provisions lead to the unmistakable conclusion that the intent behind the enactment of NRS 651.010 was to limit liability for the loss of personal property within a motor vehicle, not the motor vehicle itself. Therefore, we hold that based upon the plain language of the statute, NRS 651.010(1) does not shield a hotel from civil liability arising from the theft of or damage to a guest's motor vehicle.[4]

## CONCLUSION

Arguello is a real party in interest with standing to sue Sunset Station because his insurer only partially compensated him for his claimed losses. The district court erred in granting Sunset Station summary judgment based on its determination that NRS 651.010(1) shielded Sunset Station from liability for the theft of and damage to Arguello's vehicle. Accordingly, we reverse the district court's grant of summary judgment against Arguello and remand this matter for further proceedings.

---

[4]Arguello asserts that NRS 651.010 also does not shield a hotel from liability for breach of bailment, as opposed to other forms of civil liability. In *Nadjarian*, we concluded that NRS 651.010 does not limit common law bailment liability. 111 Nev. at 766, 895 P.2d at 1293. That conclusion, however, was based upon a version of NRS 651.010 that only limited liability from the loss of property left in guests' rooms, which differs substantially from the current version of NRS 651.010. *Id.* at 764 n.1, 895 P.2d at 1292 n.1. Thus, we have not determined whether the current version of NRS 651.010 abrogates common law bailment liability. Because we conclude that NRS 651.010 does not apply to motor vehicles, it follows that the statute does not abrogate common law bailment liability as it relates to motor vehicles. We need not reach the issue of whether NRS 651.010 abrogates common law bailment liability as it concerns other property.