# IN THE SUPREME COURT OF THE STATE OF NEVADA

ANTHONY J. GRASSO, AN
INDIVIDUAL; AND THERESA L.
GRASSO, INDIVIDUAL,
Appellants,
vs.
UMPQUA BANK,
Respondent.

No. 69180

FILED

JUN 2 8 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

This is an appeal from a district court order granting summary judgment in a guarantor deficiency action. Second Judicial District Court, Washoe County; Patrick Flanagan, Judge.

Appellants Anthony and Theresa Grasso formed Merkat Enterprises, LLC. Merkat entered into a construction loan agreement for $3,220,000 for a construction storage facility in Carson City. The loan was secured via a deed of trust on the property and guaranteed by both Anthony and Theresa Grasso. Merkat later entered into a Change in Terms Agreement (CTA) to convert the loan to permanent financing. In doing so, the Grassos executed a commercial guaranty.

Merkat ultimately defaulted on the loan. Respondent Umpqua Bank acquired this loan at "book value" from the Federal Deposit Insurance Corporation (FDIC). Umpqua and the FDIC entered into an agreement that required Umpqua to utilize its best efforts to maximize collections regarding shared-loss assets. Among other obligations,

Umpqua agreed to repay 80 percent of any funds recovered to the FDIC. When Merkat defaulted on the loan, Umpqua foreclosed on the subject property. A trustee's sale subsequently occurred, during which Umpqua acquired the property with a credit bid. Umpqua then filed an action in district court to seek a deficiency judgment against the Grassos.

The Grassos assert that Umpqua lacked standing to pursue a deficiency action because Umpqua did not demonstrate what consideration it paid for the account. According to the Grassos, because "book value" wasn't defined, Umpqua might not have paid anything for the property at all. Therefore, the Grassos claim that Umpqua lacks an injury in fact. We disagree.

This court reviews a district court's order granting summary judgment de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is proper if the pleadings and all other evidence on file demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Id.* When deciding a motion for summary judgment, all evidence "must be viewed in a light most favorable to the nonmoving party." *Id.* However, general allegations and conclusory statements do not create genuine issues of fact. *Id.* at 731, 121 P.3d at 1030-31.

"Standing is a question of law reviewed de novo." *Arguello v. Sunset Station, Inc.*, 127 Nev. 365, 368, 252 P.3d 206, 208 (2011). In general, "[s]tanding consists of both a case or controversy requirement stemming from Article III, Section 2 of the Constitution, and a subconstitutional prudential element." *In re Amerco Derivative Litig.*, 127 Nev. 196, 213, 252 P.3d 681, 694 (2011) (internal quotation marks omitted). While "state courts do not have constitutional Article III

standing, Nevada has a long history of requiring an actual justiciable controversy as a predicate to judicial relief." *Id.* (internal quotation marks omitted). Thus, to pursue a legal claim, an "injury in fact" must exist. *Bennett v. Spear*, 520 U.S. 154, 167 (1997). Specifically, there must be "an invasion of a judicially cognizable interest" that is "concrete and particularized." *Id.* The injury must also be "actual or imminent," rather than merely "conjectural or hypothetical." *Id.*

Here, we conclude that the district court did not err in granting summary judgment. Umpqua sufficiently established a concrete, particularized, and actual injury by alleging that the Grassos defaulted on the subject loan. The purchase and assumption agreement between the FDIC and Umpqua clearly indicates that the Grasso account obtained from the FDIC was acquired at "book value." The agreement sufficiently defines "book value" as "the dollar amount thereof stated on the Accounting Records of the Failed Bank." A review of the record shows that the "book value" of the Grassos' loan was $3,166,937.33 at the time Umpqua acquired the account. Therefore, the district court properly concluded that Umpqua had standing because it demonstrated an injury in fact. For the same reasons, the district court properly concluded that there was no genuine issue of material fact, as Umpqua acquired the loan at "book value," and thus there was sufficient consideration for the loan. We further note that even without monetary consideration, Umpqua did give consideration for the Grassos' loan, in the value of its foreclosure services.

Accordingly, we ORDER the judgment of the district court AFFIRMED.[1]

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich


cc:  Hon. Patrick Flanagan, District Judge
     J. Douglas Clark, Settlement Judge
     Geoffrey Lynn Giles
     Law Offices of Amy N. Tirre
     Washoe County District Court Clerk

---

[1]The Grassos also contest the validity of the loan agreement, arguing that although they both signed the loan paperwork and guaranties, they were not aware that they were signing a personal guaranty. However, this court has previously stated that "one is bound by any document one signs in spite of any ignorance of the document's content." *Yee v. Weiss*, 110 Nev. 657, 662, 877 P.2d 510, 513 (1994). They further argue that the shared loss agreement between Umpqua and the FDIC is effectively an insurance policy, bringing it under NRS 40.459(2). The Grassos base this argument on their contention that there was no evidence that Umpqua paid for the subject loan. In light of our conclusion that summary judgment was proper, we decline to address this argument and reject the Grassos' assertion that they were entitled to oral argument. *See* Second Judicial District Court Rule 12(5) (A "[d]ecision [on a motion] shall be rendered without oral argument unless oral argument is ordered by the court.").