137 Nev., Advance Opinion 63

IN THE SUPREME COURT OF THE STATE OF NEVADA

FLOR MORENCY; KEYSHA NEWELL;
BONNIE YBARRA; AAA
SCHOLARSHIP FOUNDATION, INC.;
SKLAR WILLIAMS PLLC; AND
ENVIRONMENTAL DESIGN GROUP,
LLC,
Appellants,
vs.
THE STATE OF NEVADA
DEPARTMENT OF EDUCATION;
JHONE EBERT, IN HER OFFICIAL
CAPACITY AS STATE
SUPERINTENDENT OF PUBLIC
INSTRUCTION; THE STATE OF
NEVADA DEPARTMENT OF
TAXATION; JAMES DEVOLLD,
SHARON RIGBY, CRAIG WITT,
GEORGE P. KELESIS, ANN BERSI,
RANDY BROWN, FRANCINE LIPMAN,
AND ANTHONY WREN, IN THEIR
OFFICIAL CAPACITIES AS MEMBERS
OF THE NEVADA TAX COMMISSION;
MELANIE YOUNG, IN HER OFFICIAL
CAPACITY AS THE EXECUTIVE
DIRECTOR AND CHIEF
ADMINISTRATIVE OFFICER OF THE
DEPARTMENT OF TAXATION; AND
THE LEGISLATURE OF THE STATE
OF NEVADA,
Respondents.

No. 81281



FILED

OCT 07 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court summary judgment in a case involving a constitutional challenge to legislation. Eighth Judicial District Court, Clark County; Rob Bare, Judge.

SUPREME COURT
OF
NEVADA

(O) 1947A

21-28752

*Affirmed.*

Institute for Justice and Joshua A. House, Arlington, Virginia, and Robert Gall, Austin, Texas; Saltzman Mugan Dushoff and Matthew T. Dushoff, Las Vegas,
for Appellants.

Aaron D. Ford, Attorney General, and Craig A. Newby, Deputy Solicitor General, Carson City,
for Respondents the State of Nevada Department of Education; Jhone Ebert, in her official capacity as State Superintendent of Public Instruction; the State of Nevada Department of Taxation; James DeVolld, Sharon Rigby, Craig Witt, George P. Kelesis, Ann Bersi, Randy Brown, Francine Lipman, and Anthony Wren, in their official capacities as members of the Nevada Tax Commission; and Melanie Young, in her official capacity as the Executive Director and Chief Administrative Officer of the Department of Taxation.

Legislative Counsel Bureau Legal Division and Kevin C. Powers, General Counsel, Carson City,
for Respondent the Legislature of the State of Nevada.

---

BEFORE THE SUPREME COURT, EN BANC.

## OPINION

By the Court, HARDESTY, C.J.:

Under the supermajority voting provision set forth in Article 4, Section 18(2) of the Nevada Constitution, at least two-thirds of the members' votes in each house of the Nevada Legislature are required to pass any bill "which creates, generates, or increases any public revenue in any form, including but not limited to taxes, fees, assessments and rates, or changes in the computation bases for taxes, fees, assessments and rates." Accordingly, a bill that is subject to the supermajority provision and fails to

  

obtain the necessary two-thirds majority vote from each house cannot be constitutionally enacted.

Assembly Bill (A.B.) 458, which eliminates future increases in the amount of tax credits available to businesses that donate to certain scholarship organizations, did not meet the supermajority voting requirement but was nevertheless passed during the 80th session of the Nevada Legislature in 2019. Appellants, parents of scholarship recipients, a scholarship organization, and businesses who benefited from the tax credit, challenged the legislation as unconstitutional. The district court ruled in favor of the legislation's constitutionality, and appellants appealed.

On appeal, we first consider whether appellants have standing to challenge the legislation's constitutionality. Because we conclude that they do, we next determine whether the bill increases public revenue. We conclude that A.B. 458 does not increase public revenue but instead redirects funds from a specific appropriation to the State General Fund. Therefore, the bill was not subject to the supermajority requirement. Because the district court correctly found that A.B. 458 was constitutional, we affirm the district court's order.

## FACTS

*Nevada's Educational Choice Scholarship Program*

In 2015, the 78th Nevada Legislature passed a bill establishing the Nevada Educational Choice Scholarship Program (NECSP). 2015 Nev. Stat., ch. 22, §§ 2-8, at 86-89. Under the NECSP, businesses can receive credits against the modified business payroll tax (MBT)[1] for their donations

---

[1]*See* NRS 363A.130; NRS 363B.110.

to NECSP scholarship organizations. 2015 Nev. Stat., ch. 22, §§ 2, 4, at 86-87 (codified at NRS 363A.139, NRS 363B.119, and NRS 388D.250-.280).[2] The scholarship organizations receiving these donations must provide scholarships to low-income students from the money donated to them under the NECSP. NRS 388D.270(1)(e).

As enacted in 2015, NRS 363A.139 and NRS 363B.119 provided $5,000,000 in tax credits for the 2015-16 fiscal year, $5,500,000 for the 2016-17 fiscal year, and a ten-percent increase per fiscal year thereafter. 2015 Nev. Stat., ch. 22, § 4, at 86-87. Under that formula, the total amount of tax credits available for the 2017-18 fiscal year was $6,655,000 and $7,320,500 for the 2018-19 fiscal year. The NECSP tax credits are available to donors on a first-come, first-served basis. NRS 363A.139(3); NRS 363B.119(3). Consequently, once the allotted tax credit amounts are expended, businesses remain liable for any remaining MBT taxes owed. *See* NRS 363A.139(6) (providing that once the Department of Taxation approves the tax credit amount requested, the donor subject to the MBT tax will receive a tax credit equal to the amount donated to the NECSP scholarship

---

[2]Unless indicated otherwise, the statutory references in this opinion are to the 2019 versions of NRS 363A.130, NRS 363A.139, NRS 363B.110, NRS 363B.119, and NRS 388D.250-.280. 2019 Nev. Stat., ch. 366, §§ 1-2, at 2296-99; *see also* NRS 388D.250-.280 (2019). Although NRS 363A.130, NRS 363B.110, and NRS 388D.270 were amended during the 2021 legislative session, *see* A.B. 495, 81st Leg. (Nev. 2021), the 2019 versions of the statutes govern here and the 2021 legislative amendments do not substantively alter the analysis in this opinion.

organization, which the Department will apply against the MBT tax amount due); NRS 363B.119(6) (same).

*Assembly Bill 458*

A.B. 458 was proposed in 2019 during the 80th legislative session. This bill eliminated the ten-percent annual increase in the amount of available NECSP tax credits, indefinitely capping the total available credits at $6,655,000. 2019 Nev. Stat., ch. 366, §§ 1-2, at 2296-99. While the bill was in the Assembly, the Department of Taxation submitted a fiscal note explaining that A.B. 458 "would increase general fund revenue by $665,500 in fiscal year 2019-20 and $1,397,550 in fiscal year 2020-21." A.B. 458, Fiscal Note, 80th Leg. (Nev. 2019). Assemblymembers voted in favor of the bill by at least a two-thirds majority. *See* Journal of the Assembly, 80th Leg., at 723 (Nev., April 16, 2019).

When the bill reached the Senate, legislative leadership presented two questions to the Legislative Counsel Bureau (LCB) relating to whether A.B. 458 was subject to the Nevada Constitution's supermajority provision. In a letter responding to legislative leadership's questions, LCB opined that A.B. 458 was not subject to the supermajority provision because limiting tax exemptions and credits changes neither the existing statutory tax formulas nor the existing computational bases, and ultimately, the Legislature did not subject the bill to a supermajority vote. When voted on in the Senate, A.B. 458 was passed by only a simple majority. The Governor signed it into law. *See* Senate Daily Journal, 80th Leg., at 27-28 (Nev., May 23, 2019); 2019 Nev. Stat., ch. 366, § 3, at 2299 (providing the bill's effective date).

*Proceedings in the district court*

After A.B. 458 was approved, appellants filed a complaint against respondents the State of Nevada Department of Education and

Department of Taxation and several state employees in their official capacities (collectively, the State), challenging the constitutionality of the bill.[3] The complaint sought declaratory relief, arguing that A.B. 458 violated the supermajority voting requirement because it increased revenue for the State General Fund and did not pass with the required two-thirds vote in the Senate. After the Legislature, represented by the LCB, intervened in the case pursuant to NRCP 24 and NRS 218F.720, the State moved to dismiss on the ground that appellants lack standing.[4] The district court denied the motion, finding that appellants have standing and, in the alternative, that the public-importance exception to standing applies. The parties then filed cross-motions for summary judgment. After a hearing, the district court found that the supermajority provision does not apply to A.B. 458 because it does not increase public revenue. Accordingly, the district court granted the State's motion for summary judgment. This appeal followed.

## DISCUSSION

*Appellants have standing*

We first address the State's argument that appellants lack standing because they fail to demonstrate that the State caused them harm and they do not meet the requirements under *Schwartz v. Lopez*, 132 Nev.

---

[3]The appellants in this case are Flor Morency, Keysha Newell, and Bonnie Ybarra, parents of students who had previously received a scholarship under the NECSP; the AAA Scholarship Foundation, Inc., an NECSP scholarship organization; and Sklar Williams PLLC and Environmental Design Group, LLC, two businesses that benefited from the NECSP tax credits.

[4]The Legislature will be addressed collectively with the State in this opinion unless otherwise indicated.

732, 743, 382 P.3d 886, 894 (2016), for the public-importance exception. "Standing is a question of law reviewed de novo." *Arguello v. Sunset Station, Inc.*, 127 Nev. 365, 368, 252 P.3d 206, 208 (2011). "The question of standing concerns whether the party seeking relief has a sufficient interest in the litigation. The primary purpose of this standing inquiry is to ensure the litigant will vigorously and effectively present his or her case against an adverse party." *Schwartz*, 132 Nev. at 743, 382 P.3d at 894 (citation omitted). Thus, "a requirement of standing is that the litigant personally suffer injury that can be fairly traced to the allegedly unconstitutional statute and which would be redressed by invalidating the statute." *Elley v. Stephens*, 104 Nev. 413, 416, 760 P.2d 768, 770 (1988). A general interest in the matter is normally insufficient: "a party must show a personal injury." *Schwartz*, 132 Nev. at 743, 382 P.3d at 894.

Appellants claim that the State's enactment of A.B. 458 caused them each harm in the form of lost scholarships, scholarship funding, and tax credits and that their injuries are fairly traced to the State because it enforces the bill and is responsible for administering the NECSP. In the alternative, appellants argue that the public-importance exception to standing under *Schwartz* applies. We agree with appellants in part and conclude that they have standing under the *Schwartz* public-importance exception.

*Appellants lack personal harm for general standing*

We conclude that appellants fail to meet the personalized-injury requirement for general standing.[5] The State argues that appellants

---

[5]We reject any argument that NRS 30.040(1)—creating a declaratory relief cause of action to challenge a statute's validity for any person whose

cannot demonstrate harm because the Legislature passed another bill during the 2019 session, Senate Bill (S.B.) 551, which provided additional funding for the NECSP, recuperating part of the loss of funding caused by A.B. 458. *See* 2019 Nev. Stat., ch. 537, § 2.5, at 3273-74, § 3.5, at 3276-77. We agree. Sections 2.5 and 3.5 of S.B. 551 provided an additional allotment of $4,745,000 in tax credits per fiscal year for both the 2019-20 and 2020-21 fiscal years. *See id.*; *see also* S.B. 551, 80th Leg. (Nev. 2019). As a result, appellants failed to show actual harm arising from A.B. 458's tax credit cap and consequent decrease in funding for the NECSP.[6]

> *The* Schwartz *public importance exception applies*

In appropriate cases, however, "we may grant standing to a Nevada citizen to raise constitutional challenges to legislative expenditures or appropriations without a showing of a special or personal injury." *Schwartz*, 132 Nev. at 743, 382 P.3d at 894; *see also Consipio Holding, BV*

---

"rights, status or other legal relations [were] affected by a statute"— provided appellants standing. Appellants must still demonstrate that they suffered actual personal injury. *See Doe v. Bryan*, 102 Nev. 523, 524-25, 728 P.2d 443, 443-44 (1986) (affirming the dismissal of an action brought under NRS 30.040 because the appellants failed to show that their personal injury was actual rather than speculative).

[6]In *Legislature of State of Nevada v. Settelmeyer*, we considered the constitutionality of S.B. 551 and held that sections 2, 3, 37, and 39 of S.B. 551 were unconstitutional and severable. 137 Nev., Adv. Op. 21, 486 P.3d 1276, 1280, 1282 (2021). Thus, sections 2.5 and 3.5, which provided additional funding to the NECSP, remain enforceable. *See id.* To the extent that appellants argue that the additional funding provided under S.B. 551 was inadequate in light of A.B. 458's elimination of the automatic ten-percent annual increase for future fiscal years, we reject this injury argument as speculative. *See Doe*, 102 Nev. at 524-25, 728 P.2d at 443-44.

*v. Carlberg*, 128 Nev. 454, 459, 282 P.3d 751, 755 (2012) ("A corporation that is incorporated in Nevada is a Nevada citizen." (citing *Quigley v. Cent. Pac. R.R. Co.*, 11 Nev. 350, 357 (1876) ("[A] corporation is a citizen of the state where it is created.")))).[7] For this exception to apply, a plaintiff must demonstrate that (1) "the case . . . involve[s] an issue of significant public importance," (2) "the case . . . involve[s] a challenge to a legislative expenditure or appropriation on the basis that it violates a specific provision of the Nevada Constitution," and (3) "there is no one else in a better position [than the plaintiff] who will likely bring an action and . . . the plaintiff is capable of fully advocating his or her position in court." *Schwartz*, 132 Nev. at 743, 382 P.3d at 894-95.

We conclude that appellants have demonstrated standing under the public-importance exception. First, this case involves an issue of significant public importance because it requires us to determine the constitutionality of legislation affecting the financial concerns of a significant number of businesses, organizations, and individuals throughout the state, as well as the state's budget. Second, appellants challenge the Legislature's appropriations for the NECSP under A.B. 458 on the basis that the bill did not meet the supermajority vote required under Article 4, § 18(2) of the Nevada Constitution. *See Herbst Gaming, Inc. v. Heller*, 122 Nev. 877, 890, 141 P.3d 1224, 1233 (2006) ("[A]n appropriation

---

[7]Respondents do not argue that any of the appellants are not Nevada citizens. Further, we will consider an issue of standing moot when at least some of the appellants have standing. *See Deal v. 999 Lakeshore Ass'n*, 94 Nev. 301, 304-05, 579 P.2d 775, 777-78 (1978) (concluding that standing was not at issue after having determined that at least some of the parties who brought the claim had standing). We therefore do not consider this issue further.

is the setting aside of funds . . . ." (quoting *Rogers v. Heller*, 117 Nev. 169, 173, 18 P.3d 1034, 1036 (2001))). Third, there is no one else in a better position to challenge A.B. 458 than appellants because, as parents of NECSP scholarship recipients, a registered NECSP scholarship organization, and businesses that have donated and wish to continue to donate to NECSP scholarship organizations in exchange for tax credits, they benefit from the NECSP and are interested in maintaining those benefits. Further, the record demonstrates that appellants have the "ability to competently and vigorously advocate their interests in court and fully litigate their claims." *Schwartz*, 132 Nev. at 744, 382 P.3d at 895. Thus, we conclude that appellants have satisfied *Schwartz*'s public-importance exception requirements and consequently have standing to challenge the constitutionality of A.B. 458.

*A.B. 458 is not subject to the supermajority provision*

We now turn to whether A.B. 458 is subject to the supermajority provision, which states as follows:

> Except as otherwise provided in subsection 3, an affirmative vote of not fewer than two-thirds of the members elected to each house is necessary to pass a bill or joint resolution which *creates, generates, or increases any public revenue in any form*, including but not limited to taxes, fees, assessments and rates, or changes in the computation bases for taxes, fees, assessments and rates.

Nev. Const. art. 4, § 18(2) (emphasis added). Thus, to determine whether the supermajority provision applies to A.B. 458, we must consider whether A.B. 458 "creates, generates, or increases any public revenue in any form."

This court reviews a district court's decision to grant summary judgment de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). "Summary judgment is appropriate . . . when the pleadings

and other evidence on file demonstrate that no genuine issue as to any material fact [remains] and that the moving party is entitled to a judgment as a matter of law." *Id.* (alteration in original) (internal quotation marks omitted). "The constitutionality of a statute is a question of law subject to de novo review. Statutes are presumed to be valid, and the challenger bears the burden of showing that a statute is unconstitutional. . . . [by] mak[ing] a clear showing of invalidity." *Nevadans for Nev. v. Beers*, 122 Nev. 930, 939, 142 P.3d 339, 345 (2006) (footnotes omitted).

We begin by examining the State's contention that A.B. 458 does not increase public revenue but rather reallocates existing tax funds. The State argues that A.B. 458 does not change the MBT tax rate or computation base and, thus, does not increase the total public revenue collected by the MBT tax. The State therefore contends that A.B. 458 does not increase public revenue and instead simply alters the amount of MBT tax revenue that supports the NECSP. Appellants argue that A.B. 458 is subject to the supermajority provision because it increases the State General Fund.[8] However, as discussed below, A.B. 458 is not subject to the supermajority provision because it merely reduces funding for the NECSP program, rather than "creat[ing], generat[ing], or increas[ing]" public revenue as contemplated by the supermajority provision. Nev. Const. art. 4, § 18(2).

---

[8]Appellants rely heavily on the Department of Taxation's fiscal note concluding that A.B. 458's passing "would increase *general fund* revenue by $665,500 in fiscal year 2019-20 and $1,397,550 in fiscal year 2020-21" to support this argument. A.B. 458, Fiscal Note, 80th Leg. (Nev. 2019) (emphasis added). As explained further in this opinion, the fact that a bill increases the amount of money in the General Fund does not necessarily mean it also increases public revenue overall.

SUPREME COURT
OF
NEVADA

(O) 1947A

The State General Fund is the default account that receives tax revenue; within it exist other designated accounts. *See* NRS 353.323(2) (stating that the State General Fund "must be used to receive all revenues and account for all expenditures *not otherwise provided by law to be accounted for in any other fund*" (emphasis added)); *see also* NRS 353.288(1) ("The Account to Stabilize the Operation of the State Government is hereby created in the State General Fund."). The State General Fund may increase for a variety of reasons. For example, an increase in the State's tax-paying population would increase the amount of taxes paid into the State General Fund and thus increase the public revenue the State receives. However, redirecting funds previously designated for a specific use (an appropriation) back to the State General Fund does not increase public revenue, even if it increases the unrestricted revenue available in the General Fund. *See Schwartz*, 132 Nev. at 753, 382 P.3d at 900 (defining an appropriation); *see also, e.g.*, NRS 2.185(2) (providing that this court must revert to the State General Fund any appropriated money that exceeds the amount the Legislature authorizes for expenditure); NRS 413.030 (providing that if the Civil Air Force Patrol's "Nevada Wing 27001" disbands, "any balance remaining of the appropriated money reverts to the State General Fund"). This is because the amount of public revenue—the amount of taxes collected—does not increase as the result of such a reversion.

The NECSP tax credit is clearly an appropriation. "An appropriation is the setting aside from the public revenue of a certain sum of money for a specified object, in such manner that the executive officers of the government are authorized to use that money, and no more, for that object, and no other." *Schwartz*, 132 Nev. at 753, 382 P.3d at 900 (internal quotation marks omitted). The State funds the NECSP tax credits by

setting aside a specified portion of tax money owed pursuant to NRS 363A.130 and NRS 363B.110. NRS 363A.139(4), (5); NRS 363B.119(4), (5).[9]

Under the NECSP, employers subject to MBT payroll taxes under NRS 363A.130 and NRS 363B.110 "may receive a credit against the tax otherwise due" if they make a monetary donation to a scholarship organization operating under the NECSP. NRS 363A.139(1); NRS 363B.119(1). Employers seeking to obtain tax credits under the NECSP must first notify an NECSP scholarship organization that they want to make a donation and seek the tax credits. NRS 363A.139(2); NRS 363B.119(2). Employers may only receive tax credits equal to the amount they donate to NECSP scholarship organizations and are subject to the annual limit on the total tax credits authorized statewide for the NECSP under NRS 363A.139(4), (5) and NRS 363B.119(4), (5). *See* NRS 363A.139(6) (providing that the tax credits approved will not exceed the taxpayer's donation); NRS 363B.119(6) (same). Then, the NECSP scholarship organization must seek approval of the tax credit amount sought from the Department of Taxation before accepting the donation. NRS 363A.139(2); NRS 363B.119(2). NRS 363A.139(4), (5) and NRS 363B.119(4), (5) limit the total amount of tax credits that the Department

___

[9]The amount of the available tax credits under these statutes has fluctuated over the years. *See* 2015 Nev. Stat., ch. 22, § 4, at 86-87 (providing tax credits in the amount of $5,000,000 for the 2015-2016 fiscal year, $5,500,000 for the 2016-2017 fiscal year, and a ten-percent yearly increase for all subsequent fiscal years but no additional tax credits under subsection 5); 2017 Nev. Stat., ch. 600, § 1, at 4366-67 (maintaining the same amount of tax credits as under the prior version of this statute but authorizing up to $20,000,000 for the 2017-2018 fiscal year under subsection 5); *see also* A.B. 495, 81st Leg. (Nev. 2021). However, the general manner of funding those tax credits has not changed under A.B. 458.

of Taxation can approve statewide per year to the amounts provided in those subsections. The tax credits are distributed on a first-come, first-served basis. NRS 363A.139(3), 363B.119(3). Once the allotted tax credits have been expended, employers who did not receive sufficient tax credits to offset the total amount of MBT tax they owe under NRS 363A.130 and NRS 363B.110 remain liable for the balance of MBT taxes that exceeds the allotted credits. NRS 363A.139(6); NRS 363B.119(6). Because the NECSP tax credits are in effect funded with tax revenue that is set aside, we conclude that these tax credits are an appropriation.

Having determined that the NECSP tax credits are an appropriation, we conclude that A.B. 458's reduction of the total amount of available tax credits is simply a reallocation of a portion of the total MBT revenue available, rather than something that increases the MBT tax that produces new or additional public revenue. A.B. 458 does not change the amount of money that businesses owed under the MBT payroll taxes. *See* 2019 Nev. Stat., ch. 366, § 1, at 2297, § 2, at 2298; *see also* NRS 363A.130(4); NRS 363B.110(4). Instead, the bill reduces future appropriations to the NECSP tax-credit program. *See* 2019 Nev. Stat., ch. 366, § 1, at 2296-97, § 2, at 2297-98. Before A.B. 458, the State had to allocate an increasing amount of the MBT tax revenue collected per fiscal year to credits for donors to NECSP scholarship organizations. *Compare id. with* NRS 363A.139(4) (2017), *and* NRS 363B.119(4) (2017). Now, rather than obtaining a potential ten-percent increase each fiscal year, under A.B. 458, the NECSP receives up to $6,655,000 in funding under the MBT payroll tax credit program. *See* 2019 Nev. Stat., ch. 366, § 1, at 2296-97, § 2, at 2298. Thus, A.B. 458 increases the amount of unrestricted revenue in the State General Fund by redirecting funds that would have previously, under the former

Supreme Court
of
Nevada

(O) 1947A

14

versions of NRS 363A.139 and NRS 363B.119, gone to tax credits for donors to NECSP scholarship organizations. But because the total public revenue collected under the MBT has not changed, A.B. 458 does not increase public revenue.

Further, when compared to another 2019 bill, it becomes clear why, unlike other bills that reduce tax credits, A.B. 458 does not "create, generate, or increase" public revenue such that the supermajority provision applies. Nev. Const. art. 4, § 18(2). In 2019, the Legislature also passed S.B. 551, which proposed to repeal NRS 360.203, a statute that reduces the rate of payroll taxes under the MBT if tax revenues exceed fiscal projections by a certain amount. *See* S.B. 551, 80th Leg. (Nev. 2019); 2019 Nev. Stat., ch. 537, § 2, at 3273, § 3, at 3275, § 39, at 3294. In *Legislature of State of Nevada v. Settelmeyer*, we concluded that S.B. 551 was subject to the supermajority provision because "but for the MBT bill, the State would not receive . . . increased revenue" of $98.2 million. 137 Nev., Adv. Op. 21, 486 P.3d 1276, 1281 (2021). Thus S.B. 551 required taxpayers to pay taxes that they would not otherwise owe, but, under A.B. 458, MBT payroll taxpayers' tax liability has not increased—the reduction of the tax credit only changes how much of the MBT payroll tax money is allocated to fund the NECSP credits. *See* NRS 363A.139(6) (providing that MBT taxpayers whose NECSP donations are approved by the Department of Taxation will have their MBT tax liability offset by an amount equal to the donation made); NRS 363B.119(6) (same).

A.B. 458 does not create, generate, or increase public revenue but rather redirects MBT taxes owed to the General Fund except those set aside as tax credits to support the NECSP. Thus, the supermajority

Supreme Court
of
Nevada

(O) 1947A

provision does not apply, and A.B. 458 is constitutional.[10] While providing different reasoning, the district court came to the same conclusion, and we therefore affirm its grant of summary judgment to the State. *See Pack v. LaTourette*, 128 Nev. 264, 267, 277 P.3d 1246, 1248 (2012) ("[T]his court will affirm the order of the district court if it reached the correct result, albeit for different reasons." (alteration in original) (quoting *Rosenstein v. Steele*, 103 Nev. 571, 575, 747 P.2d 230, 233 (1987))).

*CONCLUSION*

Article 4, Section 18(2) of the Nevada Constitution does not apply to A.B. 458 because it does not generate, create, or increase public revenue. Because the bill is constitutional, the district court properly granted the State's motion for summary judgment. We therefore affirm the judgment of the district court.

_____, C.J.
Hardesty

We concur:

_____, J.
Parraguirre

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Silver

_____, J.
Pickering

_____, J.
Herndon

---

[10]In light of our decision, we do not address the parties' remaining arguments.